STATE OF NORTH CAROLINA v. DONALD DALE COOKE

No. 8026SC1173

(Filed 6 October 1981)

1. **Searches and Seizures §§ 10, 13— warrantless search—no probable cause— contents of suitcase properly suppressed**

Officers did not have probable cause to search defendant's suitcase without a warrant at an airport where the evidence relied on by the officers was (1) that codefendant was "acting nervous" and agitated while struggling to fit a suitcase into an airport locker; (2) that defendant walked past codefendant at the locker without acknowledging him even though the police had seen

them talking together earlier; (3) the codefendant was carrying, and had an airline baggage claim for, a suitcase with defendant's name on it; (4) that after the police had stopped codefendant, defendant appeared and, when questioned, defendant denied ownership of the suitcase with his name on it; and (5) that codefendant and defendant left the scene to go to the bathroom giving the appearance of flight, since this evidence failed to support a reasonable suspicion that codefendant and defendant were involved in any criminal activity. Further, there were no exigent circumstances to justify the search of the suitcases without first obtaining a warrant as the suitcases were in the possession and control of the police officers and neither defendant nor codefendant gave their consent to the search of both suitcases.

**2. Searches and Seizures § 15— warrantless search—denial of ownership of suitcase—no abandonment**

Where defendant entrusted the safekeeping of his suitcase with codefendant and codefendant told police he could not consent to the search of defendant's suitcase because it was not codefendant's, defendant had not relinquished his expectations of privacy in the contents of the suitcase through his lack of actual possession. Nor was defendant's disclaimer of ownership an abandonment of his Fourth Amendment rights to privacy in its contents as the threat that an illegal search was about to take place precluded a finding that defendant's denial of ownership was a voluntary abandonment.

Judge MARTIN (Robert M.) dissenting.

APPEAL by the State from *Burroughs, Judge.* Order entered 8 February 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 April 1981.

The defendant was charged with possession with intent to sell and deliver controlled substances, to wit: Lysergic Acid Diethylamid (LSD) and Methaqualone, and was also charged with possession of LSD in violation of the North Carolina Controlled Substances Act, G.S. 90-95. Prior to trial, defendant moved to suppress this evidence which he alleged was taken from his suitcase pursuant to an unlawful, warrantless search and seizure at Douglas Municipal Airport in Charlotte, North Carolina. On 8 February 1980, a suppression hearing was held, and, after hearing testimony presented by the State and the defendant, the trial court ordered the evidence suppressed. The State is before us on appeal from that order.

*Attorney General Edmisten, by Special Deputy Attorney General Richard N. League, for the appellant State.*

*J. Marshall Haywood and James H. Carson, Jr., for the defendant appellee.*

BECTON, Judge.

[1]   The State's only assignment of error is that the trial judge erred in suppressing the evidence found in defendant's suitcase. The State argues that probable cause and exigent circumstances existed for the law enforcement officers[1] to search Cooke's suitcase without a warrant. In addition, the State contends that defendant Cooke had no legitimate expectation of privacy in the suitcase because of his denial of ownership; and that Cooke, therefore, lacked standing to challenge the legality of the search.

The scope of our review is to determine whether the trial judge's findings of fact are supported by some competent evidence in the record, and whether those findings support the judge's ultimate conclusions of law. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972); *State v. Smith*, 278 N.C. 36, 178 S.E. 2d 597, *cert. denied*, 403 U.S. 934, 29 L.Ed. 2d 715, 91 S.Ct. 2266 (1971).

I

A. The testimony at the suppression hearing does not support the State's position that probable cause and exigent circumstances existed to justify the warrantless search of Cooke's suitcase. The evidence relied upon by the State to establish probable cause is the testimony (1) that Richard Turney was "acting nervous" and agitated while struggling to fit a suitcase into an airport locker; (2) that Donald Cooke walked past Turney at the locker without acknowledging him even though the police had seen them talking together earlier; (3) that Turney was carrying, and had an airline baggage claim for, a suitcase with Cooke's name on it; (4) that after the police had stopped Turney, Cooke appeared and, when questioned, Cooke denied ownership of the suitcase with his name on it; and (5) that Turney and Cooke left the scene to go to the bathroom giving the appearance of flight.

Probable cause to search and seize requires facts and circumstances within the police officer's knowledge based on reasonable and trustworthy information that a search of a particular area will reveal objects being sought in connection with

---

1. The search and seizures were made by Charlotte Police Officer, D. R. Harkey, and North Carolina State Bureau of Investigation Agent, J. A. Davis, who were conducting a general narcotics investigation at Douglas Municipal Airport.

criminal activity or objects which will aid the police in apprehend-ing and convicting a criminal offender. *Carroll v. United States*, 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925); *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976). Because the police admitted that they had no information implicating either Cooke or Turney in any type of criminal activity,[2] we summarily reject the State's "probable cause" argument which includes as one of its premises the drug agents' reasonable and articulable suspicion that Cooke was engaged in criminal activity.[3]

The United States Supreme Court's decision in *Reid v. Georgia*, 448 U.S. 438, 65 L.Ed. 2d 890, 100 S.Ct. 2752 (1980) is dispositive of the "reasonable and articulable suspicion" and the "exigent circumstances" arguments advanced by the State. We set forth fully the Supreme Court's recitation of the facts in *Reid* because they are strikingly similar to the facts in this case.

> The petitioner arrived at the Atlanta Airport on a commer-cial airline flight from Fort Lauderdale, Fla. [a city known to be a principal place of origin for illegal drugs], in the early morning hours of August 14, 1978. The passengers left the plane in a single file and proceeded through the concourse. The petitioner was observed by an agent of the DEA, who was in the airport for the purpose of uncovering illicit com-merce in narcotics. Separated from the petitioner by several persons was another man, who carried a shoulder bag like the one the petitioner carried. As they proceeded through the concourse past the baggage claim area, the petitioner oc-casionally looked backward in the direction of the second man. When they reached the main lobby of the terminal, the second man caught up with the petitioner and spoke briefly with him. They then left the terminal building together.
>
> The DEA agent approached them outside of the building, identified himself as a federal narcotics agent, and asked them to show him their airline ticket stubs and identification,

2. Officer Harkey testified: "We had received no information about either of them. We had no reason to believe there was heroin, cocaine, marijuana, LSD or MDA in either of the two bags."

3. The State argued that "[t]he officers were dealing with persons who, on the basis of specific actions and objective appearances, looked suspicious, a relevant fac-tor in determining probable cause."

which they did. The airline tickets had been purchased with the petitioner's credit card, and indicated that the men had stayed in Fort Lauderdale only one day. According to the agent's testimony, the men appeared nervous during the encounter. The agent then asked them if they would agree to return to the terminal and to consent to a search of their persons and their shoulder bags. The agent testified that the petitioner nodded his head affirmatively, and that the other responded, "Yeah, okay." As the three of them entered the terminal, however, the petitioner began to run and before he was apprehended, abandoned his shoulder bag. The bag, when recovered, was found to contain cocaine.

*Id.* at 439, 65 L.Ed. 2d at 892-93, 100 S.Ct. 2752-53.

The Supreme Court concluded in *Reid* (1) "that the agent could not, as a matter of law, have reasonably suspected the petitioner of criminal activity on the basis of these observed circumstances"; . . . [and (2) that the agent's belief that Reid fit the drug courier profile was] "too slender a reed to support the seizure in this case." *Id.* at 441, 65 L.Ed. 2d at 894, 100 S.Ct. at 2754. The same can be said in the case at bar.

For the police to make an investigatory stop or detention of a person, they must have a reasonable suspicion, based on articulable and objective facts, that the person is involved in criminal activity. *Reid v. Georgia; Brown v. Texas*, 443 U.S. 47, 61 L.Ed. 2d 357, 99 S.Ct. 2637 (1979); *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968); *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973). Prior to stopping Turney and requesting to search his baggage, the only "suspicious" facts articulated by the officers were (1) that Turney appeared nervous and had difficulty getting a suitcase into an airport locker; (2) that the defendant, Cooke, walked past Turney at the lockers without acknowledging him; and (3) that Turney and the defendant were not dressed as "conservatively" as the "normal business traveler." This "evidence" available to the police prior to the stop of Turney and the questioning of Cooke fails to support, in our opinion, a reasonable suspicion that Turney and Cooke were involved in any criminal activity. If the police are permitted to make investigatory stops and detentions every time an individual looks nervous, wears unusual clothes or struggles with a suitcase, then

"a very large category of presumably innocent travelers . . . would be subject to virtually random seizures. . . ." *Reid v. Georgia*, 448 U.S. at 441, 65 L.Ed. 2d at 894, 100 S.Ct. at 2754.

B. Even if we were to find that the police officers had a reasonable suspicion to stop and detain Turney and, further, had probable cause to search the suitcases he was carrying, the record reveals no exigent circumstances to justify the search without first obtaining a warrant. The United States Supreme Court has long held that all searches made without a valid search warrant are presumptively unreasonable unless the search falls within one of the well-recognized exceptions to the general rule. *Stoner v. California*, 376 U.S. 483, 11 L.Ed. 2d 856, 84 S.Ct. 889 (1964). The exception relied upon by the State in this case permits a search without a warrant if the police can establish probable cause to search plus some exigent circumstances justifying an immediate search without first obtaining a warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971); *State v. Allison*, 298 N.C. 135, 257 S.E. 2d 417 (1979); *State v. McCloud*, 276 N.C. 518, 173 S.E. 2d 753 (1970).

The State contends that Cooke's and Turney's failure to return immediately from the bathroom and the fact that the search occurred at an airport where escape from the State would be easy, are exigent circumstances justifying the search of the suitcases without a warrant. The record reveals, however, that it was the police who let both Turney and Cooke go to the bathroom unaccompanied; it was the police who left the main terminal area only a few minutes after Turney and Cooke went to the bathroom. Turney testified:

> I went to the bathroom *for a few minutes*. I returned to the place where the officers and my bags had been but they, the officers and the bags, were gone. I looked around the terminal for the officers, my bags and Cooke for about fifteen or twenty minutes but I found no one. [Emphasis added.]

The only testimony from the police officers was that they waited for some "five to eight minutes" and then took the suitcases downstairs. Based on the record, Turney did return to the terminal area where he had left the police, and no evidence appears in the record indicating whether Cooke did or did not return to

the main terminal area before Turney.[4] The police could have stood outside the bathroom door, or could have followed Turney and Cooke in an effort to determine if they were fleeing from the scene. On the facts of this case, the police were not justified in thinking that Cooke and Turney had fled from the airport immediately after the investigatory stop and were not justified in removing the suitcases and conducting the warrantless searches.

In addition, the suitcases were in the possession and control of the police officers, and their contents were in no danger of being hidden, destroyed or removed from the State by the suspects. The United States Supreme Court has held with great clarity that once the police have the object to be searched safely in their possession, no exigent circumstances exist for a warrantless search. *Arkansas v. Sanders*, 442 U.S. 753, 61 L.Ed. 2d 235, 99 S.Ct. 2586 (1979); *United States v. Chadwick*, 433 U.S. 1, 53 L.Ed. 2d 538, 97 S.Ct. 2476 (1977); *see also State v. Gauldin*, 44 N.C. App. 19, 259 S.E. 2d 779 (1979), *disc. rev. denied*, 299 N.C. 333, 265 S.E. 2d 399 (1980).

The State argues, however, that taking time to get a search warrant would have delayed and possibly frustrated the subsequent arrests of Cooke and Turney. While taking time to get a search warrant might have delayed the arrests of Cooke and Turney, the arrests would still have been possible. The suitcases were tagged with identifications of both Cooke and Turney which would have facilitated a search and arrest of both men. More important, arrests would only have been necessary if a magistrate, based on the evidence presented by the police, found probable cause to issue a search warrant in the first place. Given the facts and circumstances of the case, we find (1) no reasonable suspicion, based on articulable and objective facts, sufficient to stop or detain Turney or Cooke; and (2) no probable cause and no exigent circumstances to justify the warrantless search of Cooke's suitcase.

C. Alternatively, the State argues that Turney gave his consent to the search of both suitcases. The trial judge's conclusion,

---

4. After the search and seizure, the police officers returned to where they had stopped Turney and found that Turney had returned. Turney was then arrested. Cooke was found an hour and a half later about a mile from the airport and was also arrested.

State v. Cooke

however, that no consent was given is well supported in the record and is binding on us. Both police officers testified that Turney first granted permission for the search, but then said he could not give permission for the search of Cooke's suitcase (the one containing the LSD). Turney testified that

> the other [suitcase] belonged to a guy traveling with me and I couldn't give permission as to his bag . . . I didn't give them permission to search Cooke's bag because I didn't own it.

Officer Harkey corroborated the lack of consent when he testified, "Turney had told us he was not sure he could consent to the search, *but we searched the bags anyway. . . .*" The facts in this case are significantly different from the facts in *United States v. Mendenhall*, 446 U.S. 544, 64 L.Ed. 2d 497, 100 S.Ct. 1870, *reh. den.* --- U.S. ---, 65 L.Ed. 2d 1138, 100 S.Ct. 3051 (1980), in which the Supreme Court upheld a trial court finding that Mendenhall "was twice expressly told that she was free to decline to consent to the search, and only thereafter explicitly consented to it." *Id.* at 558, 64 L.Ed. 2d at 512, 100 S.Ct. at 1879.

II

[2] The State's second major argument is that even if the stop and detention and the warrantless search and seizure were conducted in violation of the Fourth Amendment, Cooke had no reasonable expectation of privacy in the contents of the suitcase and therefore has no standing to object to the search. This argument is based on the fact that Cooke, after being questioned by the police, denied ownership of the suitcase and left the scene where Turney had been stopped by the police. We reject this argument.

Standing to complain about police violations of the Fourth Amendment depends on the legitimacy of the defendant's expectation of privacy in the area searched. *United States v. Salvucci*, 448 U.S. 83, 65 L.Ed. 2d 619, 100 S.Ct. 2547 (1980); *Rawlings v. Kentucky*, 448 U.S. 98, 65 L.Ed. 2d 633, 100 S.Ct. 2556 (1980); *Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed. 2d 387, 99 S.Ct. 421 (1978). In order to invoke the protections of the Fourth Amendment, the defendant can only complain about violations of his own constitutional rights; the privilege to complain is personal only to the individual whose rights have been infringed. *United States v. Payner*, 447 U.S. 727, 65 L.Ed. 2d 468, 100 S.Ct. 2439 (1980); *State*

*v. Craddock*, 272 N.C. 160, 158 S.E. 2d 25 (1967). As our Supreme Court recently held, "[a]n individual's standing to claim the protection of the Fourth Amendment depends upon whether the place invaded was an area in which such individual 'had a reasonable expectation of freedom from governmental intrusion.'" *State v. Alford*, 298 N.C. 465, 471, 259 S.E. 2d 242, 246 (1979), *quoting Mancusi v. DeForte*, 392 U.S. 364, 20 L.Ed. 2d 1154, 88 S.Ct. 2120 (1968).

We analyze, what was formerly called, "standing" and other closely related questions of law, in order to determine whether, on the facts of this case, Cooke had a reasonable expectation of privacy in the illegally searched suitcase. The State's theory in this appeal is that Cooke abandoned the suitcase and in so doing gave up any expectation of privacy he may have had in it. The State relies on well-settled law that a defendant cannot object to the search and seizure of property which he has voluntarily abandoned. *Abel v. United States*, 362 U.S. 217, 240-42, 4 L.Ed. 2d 668, 687, 80 S.Ct. 683, 698 (1960), *reh. denied*, 362 U.S. 984, 4 L.Ed. 2d 1019, 80 S.Ct. 1056 (1960). It is unclear from the record if the State made this "abandonment" argument at the suppression hearing. The State had an opportunity at the suppression hearing to develop this theory fully. The State had an opportunity to submit proposed findings of fact on the issue of abandonment. If the State does not properly raise and preserve issues, it waives them. *See Steagald v. United States*, --- U.S. ---, ---, 68 L.Ed. 2d 38, 44, 101 S.Ct. 1642, 1646 (1981), in which the Supreme Court said: "The Government, however, may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." Consequently, it is not necessary to remand this case for findings of fact on the issue of abandonment. The trial court specifically found "that the officers proceeded to search both suitcases and found in *defendant Cooke's* suitcase a quantity of lysergic acid diethylamide. . . ." A finding that Cooke did not abandon the suitcase is necessarily subsumed in the specific finding that it was "Cooke's suitcase" that was searched, and consequently, such a finding supports the order "that the motion of the *defendant Cooke* to suppress the evidence . . . is hereby granted." (Emphasis added.)

The fact that Cooke was not in actual possession and control of the suitcase just prior to the time of the illegal search and seizure does not necessarily defeat his reasonable expectation of privacy in the suitcase. *See United States v. Canada*, 527 F. 2d 1374 (9th Cir. 1975), *cert. denied*, 429 U.S. 867, 50 L.Ed. 2d 147, 97 S.Ct. 177 (1976). While the recent United States Supreme Court case of *Rawlings v. Kentucky* and this court's decision in *State v. Jordan*, 40 N.C. App. 412, 252 S.E. 2d 857 (1979) provide insight into this issue, they are not dispositive. In *Rawlings*, the defendant placed a large quantity of illegal drugs in a pocketbook belonging to a friend. A search of the pocketbook made by the police *pursuant to a warrant*, disclosed the drugs and resulted in defendant's arrest. The Kentucky trial court refused to order the suppression of the contraband, holding that the defendant had no standing to challenge the legality of the search. The Supreme Court upheld the court's decision on the grounds that the defendant did not have a reasonable expectation of privacy in the area searched. The friend's pocketbook was subject to access by individuals other than the defendant, and he (the defendant) had no "right to exclude other persons from [such] access. . . ." 448 U.S. at 105, 65 L.Ed. 2d at 642, 100 S.Ct. at 2561. In short, defendant placed personal property in an area without taking precautions to maintain his privacy in that area.

In a similar case, *State v. Jordan*, this Court held that the defendant did not have a reasonable expectation of privacy in the pocketbook of a passenger in his car. Based on a tip from a confidential informer, the police stopped and searched defendant's car. In a passenger's pocketbook, the police found four packages of heroin. At defendant's suppression hearing, the trial court refused to order the evidence suppressed on the grounds that the defendant had no "reasonable expectation that the place searched would remain private" and therefore, had no standing to object to the search. 40 N.C. App. at 415, 252 S.E. 2d at 859. In upholding the ruling, this Court held:

> When one voluntarily puts property under the control of another, he must be viewed as having relinquished any prior legitimate expectation of privacy with regard to that property, as it becomes subject to public exposure upon the whim of the other person.

*Id.*

The case at bar is distinguishable from both *Rawlings* and *Jordan.* In this case, Cooke did not place the drugs inside a suitcase owned by Turney, and Turney had no right of access to the contents of Cooke's suitcase. Turney told the police that the suitcase and its contents did not belong to him. Although the exterior of the suitcase was subject to public exposure at Turney's whim, the suitcase's contents were not. Turney had no right to open the suitcase and knew he could not give anyone else permission to open it. Cooke took every precaution possible to maintain the privacy of, and protect his interest in, the interior of his suitcase short of holding it in his own arms at all times. Turney was a bailee to whom Cooke entrusted the safe keeping of his suitcase. To hold that this arrangement constitutes the relinquishment by Cooke of his expectations of privacy in the contents of *his own suitcase* would be, in our view, an unwaranted extension of *Rawlings* and *Jordan.* "Notwithstanding *Rawlings*, then, ordinary bailment relationships still deserve to be recognized as establishing a justified expectation of privacy upon which Fourth Amendment standing may be grounded." LaFave, *Search and Seizure*, § 11.3 at 115 (Supp. 1981).

Just as Cooke's lack of actual possession of the suitcase at the time of the search is not fatal to his Fourth Amendment rights, his disclaimer of ownership does not necessarily constitute an abandonment signifying the relinquishment of his privacy interest in the contents of the suitcase. The focus of our inquiry should be on the defendant and whether *his own* Fourth Amendment rights have been infringed by the government. *Rakas v. Illinois.* As one court aptly held:

> [t]he state of mind of the searcher regarding the possession or ownership of the item searched is irrelevant to the issue of standing. Rather, standing to object is predicated on the objector alledging and, if challenged, proving he was the victim of an invasion of privacy.

*United States v. Canada*, 527 F. 2d at 1378 (footnote omitted).

It is undisputed that Turney told the police that one of the suitcases belonged to his traveling companion. Cooke's name was on the suitcase, and the police checked Cooke's identification and questioned him. Notwithstanding Cooke's denial of ownership at the time of the search, we find the evidence in the record suffi-

cient to support the trial court's finding that the suitcase searched belonged to Cooke.

Even if we were to assume *arguendo* that Cooke abandoned his suitcase, we would still uphold the trial court's decision to suppress the evidence. The lack of probable cause to seize Cooke's suitcase *and the threat that an illegal search was about to take place* preclude a finding in this case that Cooke's denial of ownership was a *voluntary* abandonment extinguishing his reasonable expectation of privacy in the area searched. In fact, the strongest of inferences is that his conduct was a direct result of the illegal stop and seizure by the police.

Defendants who disclaim ownership of property or reflexively discard property in their possession when alarmed by, or suspicious of, illegal police activity do so without necessarily abandoning all expectations of privacy in the property.[5] As one court noted:

> While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, *see United States v. Colbert*, 474 F. 2d 174, 176 (5th Cir. 1973) (en banc), it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct.

*United States v. Beck*, 602 F. 2d 726, 729-30 (5th Cir. 1979). *See also United States v. Jackson*, 544 F. 2d 407 (95h Cir. 1976); *Fletcher v. Wainwright*, 399 F. 2d 62 (5th Cir. 1968); *United States v. Coleman*, 450 F. Supp. 433 (E. D. Mich. 1978). When the acts relied upon by the State to establish abandonment are brought about by unlawful police conduct, those acts may not be considered to show voluntary abandonment. *See United States v. Maryland*, 479 F. 2d 566 (5th Cir. 1973) ("a loss of standing to challenge a search cannot be brought about by unlawful police conduct." *Id.* at 568.)

---

5. *See*, for example, *United States v. Tolbert*, 517 F. Supp. 1081 (E. D. Mich. 1981) in which the court concludes that an air passenger retained a protected privacy interest in her luggage despite her efforts to disavow ownership and to leave the luggage at the airport. The *Tolbert* court felt that any other result would allow the "police intentionally to circumvent the privacy protections of the Fourth Amendment" by approaching suspects and pressuring them to "abandon" their property. *Id.*

The test adopted by many federal courts is that "[i]f there is a 'nexus between . . . lawless [police] conduct and the discovery of the challenged evidence' which has not 'become so attenuated as to dissipate the taint,' then the evidence should be suppressed." 479 F. 2d at 568. *See also United States v. Beck*, 602 F. 2d at 730 and cases cited therein.

In this case, the evidence and findings of the trial court plainly show that Cooke gave his suitcase to his traveling companion, Turney, for safe keeping while he was off somewhere else in the airport; that the police unlawfully stopped and detained Turney; that when Cooke arrived back on the scene, the police were in the process of searching Turney's suitcase; and that Cooke denied ownership in the suitcase with his name on it only after being questioned by the police. Based on these facts, "it would be sheer fiction to presume [that defendant's actions] were caused by anything other than the illegal stop [and search]." *United States v. Beck*, 602 F. 2d at 730. The evidence presented at the suppression hearing, then, is insufficient to establish that Cooke *voluntarily* abandoned his suitcase, thereby intentionally relinquishing his interest and expectation of privacy in the suitcase.

The evidence presented by the State is also insufficient to establish that Turney abandoned the suitcases. Turney told the police he was not feeling well and asked to go to the bathroom. According to his testimony, he was permitted to go to the bathroom unaccompanied and was there only a couple of minutes. When he returned to where he had left the police, the suitcases and the police were gone.

Based on all the facts and circumstances presented at the suppression hearing, we cannot say the State carried its burden and established that Cooke voluntarily abandoned his suitcase and thereby forfeited his expectation of privacy in the suitcase. Cooke had standing to challenge the illegal search and seizure of his suitcase, and in all respects, the trial court's suppression order was correct and supported by the evidence. We therefore

Affirm.

Judge WHICHARD concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.) dissenting.

I dissent. The uncontested evidence is that when inquiry was made of defendant about his possible ownership of the bag, he denied ownership and left the scene. This raises an issue as to whether defendant was precluded from claiming a legitimate expectation of privacy in the suitcase sufficient to show a violation of his rights by the search. *See, United States v. Kendall*, 655 F. 2d 199 (9th Cir., 1981). I would remand for findings of fact and conclusions of law concerning defendant's abandonment of the suitcase and his standing to complain of the search of the suitcase. This procedure has been upheld by this Court in *State v. Prevette*, 39 N.C. App. 470, 250 S.E. 2d 682 (1979), *discr. rev. denied*, 297 N.C. 179, 254 S.E. 2d 38 (1979), and is not inconsistent with *Steagald v. United States*, --- U.S. ---, 68 L.Ed. 2d 38, 101 S.Ct. 1642 (1981), which applies to the Rules of Procedure in the federal courts.