STATE OF NORTH CAROLINA v. ROBERT LEE EARL JOE

No. COA10-1037

(Filed 5 July 2011)

## 1. Police Officers— resist, delay, or obstruct an officer—consensual encounter—motion to dismiss properly granted

The trial court did not err in a resisting, delaying, or obstructing an officer (RDO) case by granting defendant's motions to suppress evidence and dismiss the charge. The State invited consideration of defendant's motion to dismiss the RDO charge on the merits and considering all the circumstances surrounding the police officer's encounter with defendant prior to his flight, a reasonable person would have felt at liberty to ignore the officer's presence and go about his business.

## 2. Drugs— possession of cocaine—resist, delay, or obstruct an officer—habitual felon—voluntary dismissal

The trial court did not err in a resisting, delaying, or obstructing an officer (RDO), felony possession of cocaine, and habitual felon case by dismissing the felony possession of cocaine charge and habitual felon indictment. The State voluntarily dismissed the possession of cocaine charge and the habitual felon indictment, and the State's argument that the dismissals were erroneous was overruled.

Appeal by the State from order entered 19 May 2010 by Judge Patrice A. Hinnant in Forsyth County Superior Court. Heard in the Court of Appeals 22 February 2011.

**STATE v. JOE**

[209 N.C. App. 148 (2011)]

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for Defendant.*

STEPHENS, Judge.

## I. Procedural History

On 24 October 2008, the State charged Defendant Robert Lee Earl Joe with resisting, delaying, and obstructing Winston-Salem Police Officer J.E. Swaim and possession with the intent to sell and deliver cocaine. Defendant was subsequently indicted by a grand jury on these charges, as well as having attained habitual felon status.

On 31 March 2009, Defendant filed a motion to suppress all evidence seized in a search of Defendant after his arrest on 24 October 2008. Defendant alleged that Swaim was "without probable cause and/or lacked reasonable suspicion to order [] Defendant to stop/detain him." Defendant also filed a motion to dismiss the charge of resist, delay, or obstruct ("RDO").

The State called the matter for trial on 18 May 2010 before the Honorable Patrice A. Hinnant. Before the jury was impaneled, an evidentiary hearing was held on Defendant's motions. The trial court orally granted Defendant's motions on that date, whereupon the State dismissed the possession of cocaine charge and the habitual felon indictment. By written order entered 19 May 2010, the trial court dismissed the RDO charge, suppressed all evidence obtained as a result of Swaim's stop or arrest of Defendant, and ordered that "all charges, inclusive of the habitual felon indictment[,] are hereby dismissed."

From the trial court's order, the State appeals.

## II. Evidence

At the hearing on the motions to suppress and dismiss, the State offered the following evidence: Swaim testified that on the date of the incident at issue, he was a police officer on the street crimes unit of the Winston-Salem Police Department. That unit patrolled high crime areas and attempted to address prostitution, alcohol, and drug violations. Swaim had personally investigated more than 200 drug-related crimes and made over 100 drug-related arrests in the previous year. Swaim had also assisted other officers with narcotics investigations and been involved in surveillance operations for narcotics investigations.

On the afternoon of 24 October 2008, Swaim was patrolling the Greenway Avenue Homes apartment complex, located at the intersection of Gilmer Avenue and Inverness Street. He had personally made "no less than 10 drug arrests" in that area, including one that month, and had assisted with "no less than 50 of those same type[s] of investigations in that area." Swaim was aware of citizen complaints "mainly [for] illegal drugs" in the apartment complex.

Swaim and other officers were riding in an unmarked Ford van, commonly known as "the jump-out van." Swaim was dressed in a black t-shirt with the word "Police" written in yellow, bold letters on the front and back, and was wearing his duty belt, pistol, radio, handcuffs, and badge.

At approximately 2:00 p.m., as the van drove down Inverness Street, Swaim saw a black male, later identified as Defendant, wearing a red shirt and a navy blue jacket with the hood over his head, standing alone at the corner of the apartment building on Inverness Street. The weather was cloudy, "chilly, and it was raining."

When the van was approximately 50 feet from Defendant, Defendant "looked up." His eyes "got big when he seen [sic] the van, and he immediately turned and walked behind the apartment building[.]" Swaim got out of the van and "walked behind the apartment building to, you know, engage in a consensual conversation" with Defendant. When Swaim got behind the building, he saw Defendant running away. Swaim yelled "police" several times in a loud voice to get Defendant to stop. However, Defendant kept running so Swaim began to chase him.

Swaim chased Defendant for about two or three city blocks and continued to yell "[p]olice, stop[.]" Swaim lost sight of Defendant for a short while, but when Swaim reached 30th Street, he saw Defendant sitting "with his back against a house beside the air conditioning unit, like he was trying to hide." Defendant appeared to be "manipulating something to the left with his hand[.]" Swaim walked toward Defendant and ordered him to put his hands up, but Defendant did not comply. Swaim grabbed Defendant's arm, put him "on his chest on the ground and handcuffed him[,]" and placed him under arrest for resisting a public officer. Swaim then checked the area around where Defendant had been seated and found a clear, plastic bag containing an off-white, rock-like substance that was consistent with crack cocaine.

Defendant introduced as exhibits a map of Winston-Salem and a list of 16 known drug locations in the city.

**STATE v. JOE**

[209 N.C. App. 148 (2011)]

### III. Discussion

#### A. *Dismissal of the Resist, Delay, or Obstruct Charge*

**[1]** The State first argues that the trial court erred in dismissing the RDO charge because "there was probable cause to support that [D]efendant ignored [Swaim's] lawful command to stop." We disagree with the State's argument.

At the outset, we note that, in its brief on appeal, the State asserts that "[t]here is simply no authority in Chapter 15A of the General Statutes that authorizes dismissal pre-trial when dismissal concerns the sufficiency of the evidence." While we agree with this statement, in this case, the trial court's consideration of Defendant's motion to dismiss the RDO charge on the merits was invited error upon which the State cannot now attempt to seek relief.

The following exchange took place between the trial court, the State, and defense counsel when the proceedings in this case began:

THE COURT: Court is ready.

[THE STATE]: Your Honor, the [S]tate is calling the next matter for trial, which is the matter of Mr. Robert Joe, which begins on page 2 of our calendar at line 6 through line 7.

And at this point the defense—well, the defense and [S]tate have various motions, and the defense has filed several that I believe will require an evidentiary hearing.

And what I would propose would be to begin with a hearing in connection with the defense motion to suppress, which was filed March 31, 2009. And I believe the same evidence would support a discussion of the motion to dismiss the resisting public officer charge which was filed July 6, 2009.

[DEFENSE COUNSEL]: That's correct, Your Honor.

[THE STATE]: There is another motion to suppress a confession, but I believe that involves a separate set of facts and that would be best addressed after we address these initial—

THE COURT: When was that one filed?

[THE STATE]: That one was filed June 30th, 2009. And then depending on how that goes, we have some other motions that are non evidentiary.

THE COURT: Okay.

[THE STATE]: With your permission, I'd like to address that motion to suppress and motion to dismiss first.

[DEFENSE COUNSEL]: Your Honor, I would ask that we sequester the witnesses.

THE COURT: Allowed.

(WITNESSES LEAVE THE COURTROOM.)

[THE STATE]: And, Your Honor, in just a moment the [S]tate will call Officer Swaim for testimony in connection with these motions.

It is readily apparent that the State invited consideration of Defendant's motion to dismiss the RDO charge on the merits. Moreover, the State actively participated in the ensuing evidentiary hearing on Defendant's motion without any objection to the procedure used. Furthermore, on appeal, the State does not assert that it possesses additional evidence relevant to the RDO charge which it was denied the opportunity to present at the hearing. In light of these circumstances, we conclude that the trial court did not err in hearing Defendant's motion to dismiss.

The elements of the offense of resisting, delaying, or obstructing a public officer are:

1) that the victim was a public officer;

2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;

3) that the victim was discharging or attempting to discharge a duty of his office;

4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Dammons*, 159 N.C. App. 284, 294, 583 S.E.2d 606, 612 (citing N.C. Gen. Stat. § 142-23), *disc. review denied*, 357 N.C. 579, 589 S.E.2d 133 (2003), *cert. denied*, 541 U.S. 951, 158 L. Ed. 2d 382 (2004). "The third element of the offense presupposes lawful conduct of the officer in discharging or attempting to discharge a duty of his office." *State*

*v. Sinclair*, 191 N.C. App. 485, 489, 663 S.E.2d 866, 870 (2008). While an individual's flight from a lawful investigatory stop "may provide probable cause to arrest an individual for violation of [N.C. Gen. Stat. §] 14-223[,]" *State v. Lynch*, 94 N.C. App. 330, 334, 380 S.E.2d 397, 399 (1989), an individual's flight from a consensual encounter or from an unlawful investigatory stop does not supply such probable cause. *See Sinclair*, 191 N.C. App. at 491, 663 S.E.2d at 871.

The Fourth Amendment to the Constitution of the United States guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *See State v. Milien*, 144 N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001).

A mere consensual encounter with a police officer does not trigger Fourth Amendment protections. *INS v. Delgado*, 466 U.S. 210, 215, 80 L. Ed. 2d 247, 254 (1984). Thus, a police officer may approach an individual in public to ask him or her questions and even request consent to search his or her belongings, "so long as a reasonable person would understand that he or she could refuse to cooperate." *State v. Kincaid*, 147 N.C. App. 94, 100, 555 S.E.2d 294, 299 (2001) (citation and quotation marks omitted). Neither reasonable suspicion nor probable cause is required for a police officer to engage in a consensual encounter with an individual, *State v. Brooks*, 337 N.C. 132, 142, 446 S.E.2d 579, 585-86 (1994), and the individual is at liberty "to disregard the police and go about his business[.]" *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398 (1991) (citation and quotation marks omitted).

A "seizure" entitling an individual to the protections of the Fourth Amendment may be either a "stop" or an "arrest." *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903 (1968). An investigatory "stop" is "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information[.]" *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617 (1972). An "investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). To determine whether reasonable suspicion exists, a court "must consider 'the totality of the circumstances—the whole picture.' " *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

*Id.* at 441-42, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)).

" 'When a law enforcement officer, by word or actions, indicates that an individual must remain in the officer's presence . . ., the person is for all practical purposes under arrest if there is a substantial imposition of the officer's will over the person's liberty.' " *State v. Zuniga*, 312 N.C. 251, 260, 322 S.E.2d 140, 145 (1984) (quoting *State v. Sanders*, 295 N.C. 361, 376, 245 S.E.2d 674, 684 (1978)). An officer must have probable cause to effectuate a warrantless arrest. *State v. Mills*, 104 N.C. App. 724, 728, 411 S.E.2d 193, 195 (1991). "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge, and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890, *reh'g denied*, 338 U.S. 839, 94 L. Ed. 513 (1949)).

In *State v. Sinclair*, a police officer and another plain-clothes law enforcement agent observed *Sinclair* sitting in a chair "among six to ten other people" outside a bowling alley, which was " ' a local hangout' " and a "known drug activity area." *Sinclair*, 191 N.C. App. at 487, 663 S.E.2d at 869. The officer approached Sinclair and said, " '[L]et me talk to you.' " *Id.* "[Sinclair] stood up out of his chair, took two steps toward [the officer], and said, 'Oh, you want to search me again, huh?' [Sinclair] did not sound irritated or agitated, '[j]ust normal.' " *Id.* The officer replied, "Yes, sir," and continued walking toward Sinclair. *Id.* Sinclair "stopped ten or twelve feet from [the officer], 'quickly shoved both of his hands in his front pockets and then removed them,' . . . made his hands into fists and took a defensive stance." *Id.* As the officer got closer, Sinclair said, " 'Nope. Got to go,' and 'took off running' across an adjacent vacant lot." *Id.* The officers chased Sinclair and soon after took him into custody. *Id.*

This Court concluded that, "considering all the circumstances surrounding the encounter prior to [Sinclair's] flight, a reasonable person would have felt at liberty to ignore [the officer's] presence and

go about his business[,]" and that "[Sinclair's] flight from a consensual encounter cannot be used as evidence that [Sinclair] was resisting, delaying, or obstructing [the officer] in the performance of his duties." *Id.* at 491, 663 S.E.2d at 871. Accordingly, there was no evidence that Sinclair acted " 'unlawfully, that is . . . without justification or excuse[,]' " *id.* at 491, 663 S.E.2d at 871 (quoting *Dammons*, 159 N.C. App. at 294, 583 S.E.2d at 612), and this Court concluded that the trial court erred in denying Sinclair's motion to dismiss the charge of resisting a public officer. *Id.*

This Court further determined that "even if [the officer] was attempting to effectuate an investigatory stop, there are insufficient 'specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant[ed] [the] intrusion.' " *Id.* (quoting *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979)).

In *State v. Lynch*, plain-clothes officers who were on patrol in an unmarked police car observed Lynch on a street corner around 5:30 p.m. and "mistakenly believed" that Lynch was a person for whom they "had warrants to arrest . . . for sale or delivery of cocaine." *Lynch*, 94 N.C. App. at 330-31, 380 S.E.2d at 397. Shortly thereafter, the officers stopped a vehicle that Lynch had entered and one of the officers "approached the car, identified himself as a police officer, and asked [Lynch] to identify himself. [Lynch] did not respond, jumped out of the car, and attempted to flee." *Id.* at 331, 380 S.E.2d at 397. The officers apprehended Lynch and, after a brief struggle, took him into custody, initially arresting him for resisting public officers. *Id.*

This Court determined that, since the officers had "a reasonable basis to stop [Lynch] and require him to identify himself" to ascertain whether he was the named subject in their arrest warrants, "the officers were lawfully discharging a duty of their office." *Id.* at 333, 380 S.E.2d at 399. Accordingly, based on the evidence of Lynch's flight from a lawful investigatory stop and his brief struggle after his arrest, this Court upheld Lynch's conviction under N.C. Gen. Stat. § 14-223. *Id.* at 334, 380 S.E.2d at 399.

The circumstances in the present case are analogous to those in *Sinclair* and distinguishable from those in *Lynch*. Here, Swaim approached the apartment complex at 2:00 on a rainy, chilly afternoon. Defendant was standing on the corner, dressed appropriately in a jacket with the hood over his head. There was no evidence that Swaim had had prior dealings with Defendant. Although Swaim

described the apartment complex as a known drug area where he had made drug-related arrests in the past, Swaim had no specific information about drug activity at the complex on that date. When Defendant saw the jump-out van approaching, "his eyes got big" and he turned and walked behind the apartment building. Swaim got out of the van and walked behind the apartment to "engage in a consensual conversation" with Defendant.

When Swaim rounded the corner of the apartment building, he observed Defendant running. Swaim chased Defendant and yelled several times that he was a police officer. After chasing Defendant for several blocks, and losing sight of him for a brief period, Swaim found Defendant squatting beside an air conditioning unit, apparently manipulating something to the left with his hand. Swaim grabbed Defendant's arm, put him in handcuffs, and placed him under arrest for resisting a public officer.

Considering all the circumstances surrounding the encounter prior to Defendant's flight, we conclude that a reasonable person would have felt at liberty to ignore Swaim's presence and go about his business. *See Sinclair*, 191 N.C. App. at 490, 663 S.E.2d at 871. At the time Defendant turned and walked behind the apartment building, Swaim was still inside the van, and a reasonable person would not have felt compelled to wait on the street corner in the rain to determine if an officer inside the van desired to talk with him. Furthermore, the State acknowledged that Swaim exited the van and rounded the corner of the apartment building not with the intent to effectuate an investigatory stop but, rather, to "engage in a consensual conversation" with Defendant.

As "Defendant's flight from a consensual encounter cannot be used as evidence that Defendant was resisting, delaying, or obstructing [Swaim] in the performance of his duties[,]" *Sinclair*, 191 N.C. App. at 491, 663 S.E.2d at 871, there is no evidence that Defendant acted "unlawfully, that is . . . without justification or excuse." *Dammons*, 159 N.C. App. at 294, 583 S.E.2d at 612. With the State's acquiescence in the court's consideration of Defendant's motion as a pre-trial procedure, the trial court did not err in granting Defendant's motion to dismiss the charge of resisting a public officer. The State's argument is overruled.

## B. Dismissal of Possession of Cocaine Charge and Habitual Felon Indictment

[2] The State further argues that the trial court erred in dismissing the felony possession of cocaine charge and habitual felon indictment. Specifically, the State argues that even if the motions to suppress and to dismiss the RDO charge were properly granted, the trial court was without the authority to dismiss the felony possession of cocaine charge and habitual felon indictment. We disagree with the State's argument.

"The granting of a motion to suppress does not mandate a pretrial dismissal of the underlying indictments." *State v. Edwards*, 185 N.C. App. 701, 706, 649 S.E.2d 646, 650, *disc. review denied*, 362 N.C. 89, 656 S.E.2d 281 (2007). Thus, where a motion to suppress has been granted, the State may elect to dismiss any or all charges or proceed to trial without the suppressed evidence and attempt to establish a *prima facie case. Id.* The State may dismiss charges

> by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk at any time. The clerk must record the dismissal entered by the prosecutor and note in the case file whether a jury has been impaneled or evidence has been introduced.

N.C. Gen. Stat. § 15A-931 (2009). If the State elects to proceed, a defendant may move to dismiss at the close of the State's evidence and renew his motion at the close of all evidence. N.C. Gen. Stat. § 15-173 (2005).

In this case, after hearing the evidence and the arguments of counsel on Defendant's motions to suppress and to dismiss the RDO charge, the following exchange took place between the trial court, the defense attorney, and the prosecutor:

THE COURT: Court is ready.

In marginally looking at the *Sinclair* case, the court will allow the defense motion.

[THE STATE]: Both motions, Your Honor?

THE COURT: Yes.

[DEFENSE COUNSEL]: Thank you, Your Honor.

[THE STATE]: Well, in that case, I believe that we are done. And as a result, I believe that the [S]tate would be unable to proceed

with the case in chief, so I guess, procedurally, entering a dismissal by the court is the result of allowing these motions?

THE COURT: Okay.

[THE STATE]: Is that right?

THE COURT: I think that's right.

[THE STATE]: And then as a result of that, the [S]tate would not pursue the habitual felon indictment. And I'll provide the paperwork.

[DEFENSE COUNSEL]: Thank you, Madam D.A.

The State could have elected to pursue the possession of cocaine charge despite the suppression of the alleged cocaine. However, the State clearly announced in open court that it "would be unable to proceed with the case in chief" as a result of the trial court's allowing Defendant's motions and indicated its intention to dismiss the possession of cocaine charge. The State further announced that it "would not pursue the habitual felon indictment" and that it would "provide the paperwork." Although the State was not required to dismiss the possession of cocaine charge or the habitual felon indictment, the State elected to do so "by entering an oral dismissal in open court before . . . the trial[.]" N.C. Gen. Stat. § 15A-931.

Citing *State v. Edwards, supra,* the State argues that the trial court "exceeded its authority in deciding that the State could not make its case at trial" and "invaded the province of the prosecution[.]" The State's argument fails.

In *Edwards,* defendant was charged with four drugrelated offenses. Defendant filed a motion to suppress the evidence seized as the result of a search warrant executed on his residence. The trial court granted defendant's motion to suppress and dismissed the indictments *ex mero motu. Edwards,* 185 N.C. App. at 702, 649 S.E.2d at 648.

Unlike in *Edwards* where the trial court presupposed the State's inability to proceed to trial as a result of the suppression of the evidence, the State in this case affirmatively announced in open court that it could not make its case at trial as a result of the evidence being suppressed and indicated its intention to dismiss the possession of cocaine charge as well as the habitual felon indictment. The State's argument is overruled.

## C. Motion to Suppress

The State further argues that the trial court erred in granting Defendant's motion to suppress. Because we are without jurisdiction to hear this issue, the State's argument is dismissed.

"The State may appeal an order by the superior court granting a motion to suppress as provided in [N.C. Gen. Stat. §] 15A-979." N.C. Gen. Stat. § 15A-1445 (2009). Pursuant to N.C. Gen. Stat. § 15A-979,

> [a]n order by the superior court granting a motion to suppress prior to trial is appealable to the appellate division of the General Court of Justice prior to trial upon certificate by the prosecutor to the judge who granted the motion that the appeal is not taken for the purpose of delay and that the evidence is essential to the case.

N.C. Gen. Stat. § 15A-979(c) (2009).

In this case, after the trial court granted Defendant's motion to suppress, the State voluntarily dismissed the possession of cocaine charge and the habitual felon indictment. The State's subsequent appeal to this court, arguing that the dismissals were erroneous, has been overruled. *See supra.* As a dismissal by the State is "a simple and final dismissal which terminates the criminal proceedings under that indictment[,]" *State v. Lamb,* 321 N.C. 633, 641, 365 S.E.2d 600, 604 (1988), the criminal proceedings under the possession of cocaine and habitual felon indictments have been terminated. Because there is no longer any case which the suppressed evidence is "essential to[,]" this Court has no jurisdiction to review and decide the State's argument. Accordingly, the argument is dismissed.

AFFIRMED.

Judges HUNTER, ROBERT C. and ERVIN concur.