**STATE v. JOE**

[222 N.C. App. 206 (2012)]

STATE OF NORTH CAROLINA v. ROBERT LEE EARL JOE

No. COA10-1037-2

(Filed 7 August 2012)

**1. Arrest—law of case—lack of probable cause—resist, delay, or obstruct charge**

It was the law of this possession of cocaine case that the police officer lacked probable cause to arrest defendant. Thus, the portion of the order dismissing the resist, delay, or obstruct charge was affirmed.

**2. Search and Seizure—motion to suppress cocaine—not investigatory stop—res judicata—result of arrest**

The trial court erred by granting defendant's motion to suppress the cocaine found following his arrest. The evidence defend-ant sought to suppress was not obtained as the result of an investigatory stop, but instead was discovered following his arrest. It was *res judicata* that the police officer lacked probable cause to arrest defendant, and thus, any evidence found during a search incident to that invalid arrest must be suppressed.

Appeal by the State from order entered 19 May 2010 by Judge Patrice A. Hinnant in Forsyth County Superior Court. Heard in the Court of Appeals 22 February 2011. An opinion was filed by this Court on 5 July 2011, affirming the trial court's 19 May 2010 order. *See State v. Joe,* ____ N.C. App. ____, 711 S.E.2d 842 (2011). By opinion filed 13 April 2012, the North Carolina Supreme Court vacated our opinion in part, dismissed its allowance of discretionary review as improvidently allowed in part, and remanded for consideration of Defendant's remaining issue on appeal, not addressed in our original opinion. *See State v. Joe,* ____ N.C. ____, ____ S.E.2d ____ (2012).

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for Defendant.*

STEPHENS, Judge.

*Procedural Background and Evidence*

The essential procedural and factual background was recapped in this Court's prior opinion:

On 24 October 2008, the State charged Defendant Robert Lee Earl Joe with resisting, delaying, and obstructing Winston-Salem Police Officer J.E. Swaim and possession with the intent to sell and deliver cocaine. Defendant was subsequently indicted by a grand jury on these charges, as well as having attained habitual felon status.

On 31 March 2009, Defendant filed a motion to suppress all evidence seized in a search of Defendant after his arrest on 24 October 2008. Defendant alleged that Swaim was "without probable cause and/or lacked reasonable suspicion to order [] Defendant to stop/detain him." Defendant also filed a motion to dismiss the charge of resist, delay, or obstruct ("RDO").

The State called the matter for trial on 18 May 2010 before the Honorable Patrice A. Hinnant. Before the jury was impaneled, an evidentiary hearing was held on Defendant's motions. The trial court orally granted Defendant's motions on that date, whereupon the State dismissed the possession of cocaine charge and the habitual felon indictment. By written order entered 19 May 2010, the trial court dismissed the RDO charge, suppressed all evidence obtained as a result of Swaim's stop or arrest of Defendant, and ordered that "all charges, inclusive of the habitual felon indictment[,] are hereby dismissed."

. . . .

At the hearing on the motions to suppress and dismiss, the State offered the following evidence: Swaim testified that on the date of the incident at issue, he was a police officer on the street crimes unit of the Winston-Salem Police Department. That unit patrolled high crime areas and attempted to address prostitution, alcohol, and drug violations. Swaim had personally investigated more than 200 drug-related crimes and made over 100 drug-related arrests in the previous year. Swaim had also assisted other officers with narcotics investigations and been involved in surveillance operations for narcotics investigations.

On the afternoon of 24 October 2008, Swaim was patrolling the Greenway Avenue Homes apartment complex, located at the intersection of Gilmer Avenue and Inverness Street. He had personally made "no less than 10 drug arrests" in that area, including one that month, and had assisted with "no less than 50 of those same type[s] of investigations in that area." Swaim was aware of citizen complaints "mainly [for] illegal drugs" in the apartment complex.

Swaim and other officers were riding in an unmarked Ford van, commonly known as "the jump-out van." Swaim was dressed in a black t-shirt with the word "Police" written in yellow, bold letters on the front and back, and was wearing his duty belt, pistol, radio, handcuffs, and badge.

At approximately 2:00 p.m., as the van drove down Inverness Street, Swaim saw a black male, later identified as Defendant, wearing a red shirt and a navy blue jacket with the hood over his head, standing alone at the corner of the apartment building on Inverness Street. The weather was cloudy, "chilly, and it was raining."

When the van was approximately 50 feet from Defendant, Defendant "looked up." His eyes "got big when he seen [sic] the van, and he immediately turned and walked behind the apartment building[.]" Swaim got out of the van and "walked behind the apartment building to, you know, engage in a consensual conversation" with Defendant. When Swaim got behind the building, he saw Defendant running away. Swaim yelled "police" several times in a loud voice to get Defendant to stop. However, Defendant kept running so Swaim began to chase him.

Swaim chased Defendant for about two or three city blocks and continued to yell "[p]olice, stop[.]" Swaim lost sight of Defendant for a short while, but when Swaim reached 30th Street, he saw Defendant sitting "with his back against a house beside the air conditioning unit, like he was trying to hide." Defendant appeared to be "manipulating something to the left with his hand[.]" Swaim walked toward Defendant and ordered him to put his hands up, but Defendant did not comply. Swaim grabbed Defendant's arm, put him "on his chest on the ground and handcuffed him[,]" and placed him under arrest for resisting a public officer. Swaim then checked the area around where Defendant had been seated and found a clear, plastic bag containing an off-white, rock-like substance that was consistent with crack cocaine.

*State v. Joe*, __ N.C. App. __, __, 711 S.E.2d 842, 843-44 (2011).

By order dated 19 May 2010, the trial court decreed Defendant's arrest for RDO illegal and dismissed that charge, suppressed the evidence obtained as a result of the illegal arrest, and as a result, dismissed the remaining charges against Defendant.

In our original opinion, we held that "the trial court did not err in granting Defendant's motion to dismiss the charge of resisting a pub-

lic officer." *Id.* at ____, 711 S.E.2d at 847-48. In addition, we affirmed the trial court's dismissal of the felony possession of cocaine charge and habitual felon indictment on the basis that the prosecutor's remarks to the trial court had amounted to a voluntary dismissal in open court. *Id.* at ____, 711 S.E.2d at 848. Having upheld the State's dismissal of the possession charge and habitual felon indictment, there no longer existed any case to which the evidence suppressed by the trial court's 19 May 2010 order was relevant, and accordingly, we concluded that we lacked jurisdiction to address the State's contentions of error in that suppression order. *See id.* at ____, 711 S.E.2d at 849.

## Effect of the Supreme Court's Per Curiam Opinion

In a *per curiam* opinion filed 13 April 2012, the North Carolina Supreme Court vacated and remanded in part this Court's opinion in *State v. Joe,* ____ N.C. App. ____, 711 S.E.2d 842 (2011), *vacated and remanded in part, disc. review improvidently allowed in part,* ____ N.C. ____, ____ S.E.2d ____ (2012).

In vacating our decision "to the extent it may be read as affirming the trial court's dismissal of charges on its own motion[,]" the Supreme Court also held that discretionary review had been improvidently allowed as to "all other issues" and remanded for consideration of the State's argument regarding Defendant's motion to suppress. *Id.*

[1] We note that the Supreme Court's *per curiam* opinion leaves unchanged our resolution of the State's argument that the trial court erred in granting Defendant's motion to dismiss the charge of resisting a public officer because "there was probable cause to support that [D]efendant ignored [Swaim's] lawful command to stop." In rejecting the State's argument, we concluded that,

> [c]onsidering all the circumstances surrounding the encounter prior to Defendant's flight, we conclude that a reasonable person would have felt at liberty to ignore Swaim's presence and go about his business. At the time Defendant turned and walked behind the apartment building, Swaim was still inside the van, and a reasonable person would not have felt compelled to wait on the street corner in the rain to determine if an officer inside the van desired to talk with him. Furthermore, the State acknowledged that Swaim exited the van and rounded the corner of the apartment building not with the intent to effectuate an investiga-

tory stop but, rather, to "engage in a consensual conversation" with Defendant.

*Id.* at __, 711 S.E.2d at 847 (citation omitted). Thus, it is the law of this case that Swaim lacked probable cause to arrest Defendant. *Id.*

### Motion to Suppress

**[2]** The State argues that the trial court erred in granting Defendant's motion to suppress the cocaine found following Defendant's arrest. We disagree.

> The trial court's findings of fact regarding a motion to suppress are conclusive and binding on appeal if supported by competent evidence. This Court determines if the trial court's findings of fact support its conclusions of law. Our review of a trial court's conclusions of law on a motion to suppress is *de novo*.

*State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (citations and quotation marks omitted), *disc. review denied*, 362 N.C. 89, 656 S.E.2d 281 (2007).

Here, the State has not challenged any of the findings of fact in the trial court's order as unsupported by competent evidence, and as a result, they are binding on appeal. *See State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (citation omitted). Rather, the State contends that suppression of the cocaine was erroneous on two bases: (1) that Swaim had reasonable suspicion for an investigatory stop of Defendant, making his seizure legal, and (2) that in the event Defendant's seizure was illegal, the cocaine was not found as a result of the unlawful conduct.

Constitutional protections against unreasonable searches arise when a person is "seized" in the form of either a "stop" or an "arrest." *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903 (1968). Under our Fourth Amendment jurisprudence, these two types of seizures require different levels of justification, commensurate with the invasiveness of the search each seizure permits. *See, e.g., id.* at 19 n. 15, 20 L. Ed. 2d at 904 n. 15 ("[T]he sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness.").

An investigatory stop is a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo

momentarily while obtaining more information. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.

*Joe*, ____ N.C. App. at ____, 711 S.E.2d at 846 (citations, quotation marks, and brackets omitted). In contrast, "[t]he constitutional validity of [a] search [incident to arrest]. . . must depend upon the constitutional validity of the . . . arrest." *Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964). "Under the Constitution, an arrest is valid when the officer has probable cause to make it." *State v. Mangum*, 30 N.C. App. 311, 314, 226 S.E.2d 852, 854 (1976). In turn, probable cause is defined as "those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *State v. Williams*, 314 N.C. 337, 343, 333 S.E.2d 708, 713 (1985) (citations omitted).

Here, the trial court found:

8. Officer [] Swaim testified that he then proceeded to arrest [] Defendant for the charge of Resist, Delay or Obstruct due to [] Defendant fleeing from the officer.

9. *Subsequent to [D]efendant's arrest*, a baggie with an off[-] white colored substance was located in the area where [] Defendant was found.

(Emphasis added). Thus, the evidence Defendant sought to suppress was not obtained as the result of an investigatory stop, but instead was discovered following Defendant's arrest. As noted *supra*, it is *res judicata* that Swaim lacked probable cause to arrest Defendant, and thus, any evidence found during a search incident to that invalid arrest must be suppressed.

However, the State contends the cocaine was not found as a result of the illegal seizure, but rather was abandoned by Defendant. Specifically, the State notes that the cocaine was discovered not on Defendant's person, but instead "was located in the area where [] Defendant was found [following his arrest]." After careful review, we disagree.

Evidence obtained as the result of an illegal search or seizure must be suppressed. *State v. McKinney*, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006). An individual's right to be free from unreasonable searches and seizures, protected under the Fourth Amendment, is

**STATE v. JOE**

[222 N.C. App. 206 (2012)]

based on a defendant's "reasonable expectation of freedom from government intrusion." *State v. Cooke*, 54 N.C. App. 33, 41, 282 S.E.2d 800, 806 (1981), *affirmed*, 306 N.C. 132, 291 S.E.2d 618 (1982) (citation omitted). One loses his reasonable expectation of privacy when he voluntarily abandons his property. *Id.*

Because one no longer has an expectation of privacy in abandoned property, "the property [] abandoned may be seized without probable cause." *State v. Johnson*, 98 N.C. App. 290, 297, 390 S.E.2d 707, 711 (1990) (citations omitted). Abandonment occurs only "[w]hen one voluntarily puts property under the control of another[.]" *Cooke*, 54 N.C. App. at 42, 282 S.E.2d at 807 (emphasis added). However, when a suspect "discards property as the product of [] illegal police activity, he will not be held to have voluntarily abandoned the property or to have necessarily lost his reasonable expectation of privacy with respect to it." *State v. Cromartie*, 55 N.C. App. 221, 225, 284 S.E.2d 728, 731 (1981) (citation omitted).

While not binding precedent, we find persuasive the analysis of a recent unpublished opinion from a case with virtually indistinguishable facts:

> At the time [the] defendant abandoned the contraband, he was being arrested [illegally]. After securing him, the police found the contraband on the ground where [the] defendant was handcuffed. Because his abandonment of the contraband was the product of his illegal arrest, it cannot be said to have been voluntarily abandoned. Therefore, the trial court was correct in granting [the] defendant's motion to suppress the contraband.

*State v. Springs*, ____ N.C. App. ____, ____, ____ S.E.2d ____, ____ (2012) (unpublished).[1]

Here, as in *Springs*, the unchallenged findings of fact reveal that the officers discovered the bag of cocaine near where Defendant had been found and seized it only *after* Defendant was unlawfully arrested and handcuffed. "Because his abandonment of the contra-

---

1. This holding is consistent with the analysis employed and results reached on similar facts in other jurisdictions. *See U.S. v. Wilson*, 953 F.2d 116, 127 (4th Cir. 1991) (holding that the officers' discovery of contraband was "clearly the direct result of the illegal seizure" of the defendant and reversing an order denying the defendant's motion to suppress); *U.S. v. Beck*, 602 F.2d 726, 730 (5th Cir. 1979) (holding that when the defendant threw contraband from his car after being illegally stopped, the relinquishment was not voluntary, and it would be "sheer fiction to presume [it was] caused by anything other than the illegal stop.").

band was the product of his illegal arrest, it cannot be said to have been voluntarily abandoned." *Id.* Accordingly, the cocaine was obtained as the result of unlawful police conduct, and the court properly suppressed it.

### Conclusion

The portion of the trial court's order dismissing the possession of cocaine charge and habitual felon indictment is vacated; the portion of the order dismissing the RDO charge and allowing Defendant's motion to suppress is affirmed. We remand to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part; vacated in part and remanded.

Judges HUNTER, ROBERT C., and ERVIN concur.