STATE OF NORTH CAROLINA v. MAURICE DONNELL WHITE

No. COA10-1143

(Filed 16 August 2011)

**Search and Seizure—no reasonable suspicion for stop—no probable cause for arrest—motion to suppress improperly denied**

> The trial court erred in a possession with intent to sell and deliver cocaine and possession of cocaine case by concluding the police had reasonable suspicion to conduct an investigatory stop and in denying defendant's motion to suppress the State's evidence obtained pursuant to his unlawful seizure. The circumstances did not provide the officers with reasonable suspicion necessary to justify an investigatory stop of defendant or probable cause for defendant's arrest.

Appeal by Defendant from denial of motions to suppress entered 17 April 2009 by Judge Shannon R. Joseph and 1 October 2009 by Judge R. Stuart Albright and judgment entered 12 May 2010 by Judge John O. Craig, III in Moore County Superior Court. Heard in the Court of Appeals 24 March 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Jay L. Osborne, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kathleen M. Joyce, for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Maurice Donnell White ("Defendant") appeals the denial of his motions to suppress evidence in connection with his warrantless arrest for possession with intent to sell and deliver cocaine, and possession of cocaine. Defendant asserts (1) the trial court erred in finding the police conducted a lawful investigatory stop based on reasonable suspicion of criminal activity, and (2) the trial court erred in denying his motions to suppress evidence obtained from an unlawful investigatory stop in violation of the Fourth Amendment of the United States Constitution and analogous provisions of the North Carolina Constitution. We reverse.

## I. Facts & Procedural History

The State's evidence tended to show the following. On the 2:00 p.m. to midnight shift of 15 August 2008, Detective Brian Edwards and Sergeant Jack Austin of the Southern Pines Police Department were on patrol in an unmarked white Dodge Durango. Sometime after dark, the officers received a report from dispatch complaining of loud music near the corner of Coates Street and Shaw Avenue. Although this location is at the center of Brookside Park Apartments, the report did not identify the apartment complex or a specific apartment within it as the source of the music complaint, nor did it identify the person who made the complaint. Additionally, Coates Street intersects Shaw Avenue at two locations, but the report did not specify either intersection as the subject of the loud music complaint.

Detective Edwards testified that he had been to the Brookside Park Apartments on "several occasions throughout the evening" and had made between fifty and one hundred drug arrests there in the past. He also stated he was aware of other arrests made at that location by other officers of his department, and thus he believed it to be a high-crime area.

Responding to the loud music complaint, Detective Edwards saw three or four men, including Defendant, standing near a dumpster near the intersection of Coates and Shaw Streets. The officer did not recognize any of these men, but decided to question them about the loud music. As Detective Edwards turned from Shaw Avenue on to Coates Street, he stopped his vehicle about thirty-five feet from the men and on the opposite side of the dumpster.

The officers were dressed in cargo pants and blue polo shirts with "Police" written in black letters on the back and an embroidered badge on the front left chest. The officers' car was unmarked with no labels, decals, or exterior lights. Detective Edwards testified that as he was exiting the vehicle and turning to close the door, he heard Sergeant Austin yell, "Stop! Police[,]" and he "took off running around the back side of the vehicle." Detective Edwards then "ran to the opposite side of the Dumpster so [he] could see[,]" and observed Sergeant Austin chasing a black male up Shaw Avenue. Detective Edwards gave pursuit behind Sergeant Austin.

As he pursued Defendant, Detective Edwards shouted for Defendant to stop. After running approximately one hundred and fifty yards, Defendant tripped and fell to the ground. Detective Edwards then "jumped on top of him," rolled Defendant on his side and hand-

cuffed him. Sergeant Austin then arrived and helped Defendant to his feet. After Defendant stood, Sergeant Austin noticed a small bag on the ground and told Detective Edwards, "There's a bag of crack there next to you." Detective Edwards visually identified the bag's contents as crack cocaine.

Defendant was charged with (1) possession with intent to sell and deliver cocaine, (2) possession of cocaine, and (3) resisting, delaying, and obstructing a public officer pursuant to N.C. Gen. Stat. § 14-223. On 8 December 2008, a grand jury issued indictments on the first two charges, but did not return an indictment for the charge of resisting, delaying, and obstructing a public officer.

On 15 January 2009, Defendant filed a Motion to Suppress the State's evidence arguing that on the night in question Defendant was not engaging in any activity that would provide reasonable suspicion necessary to justify his seizure. He also argued the police officers' recovery of the substance the State contended to be cocaine was the result of an unlawful seizure. The Motion came on for a hearing on 18 February 2009 in Moore County Superior Court, Judge Shannon R. Joseph presiding.

At the suppression hearing, Detective Edwards testified that before he stopped his car and exited the vehicle, he did not hear any music, and did not see any noise-producing device near the men. When asked by the trial court why he stopped where the men were gathered, he replied, "[w]e were given the call that there was loud music at the corner of Coates and Shaw Avenue." When asked by the trial court whether there was loud music at this location, he reiterated that he heard no loud noises. After cross-examination, the trial court asked what Detective Edwards saw the men doing as he approached; he replied, "They were congregating in between the apartment and the trash can area." He did not see any weapons, there was no exchange of hands that would indicate a possible drug transaction, and he was unable to identify any of the men prior to arresting Defendant. Sergeant Austin did not testify at the hearing.

The trial court denied Defendant's Motion to Suppress during the 18 February 2009 hearing (and by Order entered 21 April 2009) and found, *inter alia*: Defendant's flight from the scene was unprovoked; after Defendant fell and before standing again, Detective Edwards arrested Defendant for resisting, delaying, and obstructing an officer; after Defendant was returned to standing, Detective Edwards and Officer Austin observed a plastic bag of rock cocaine where

Defendant had been lying on the ground; and Detective Edwards had personal knowledge that the area at issue is a high-crime area. The trial court concluded that considering the totality of the circumstances the police had reasonable suspicion to believe criminal activity was afoot, and that none of Defendant's state or federal constitutional rights had been violated.

Defendant filed a Supplemental Motion to Suppress the State's evidence on 16 April 2009. In this motion, Defendant argued that the trial court, following the 18 February 2009 suppression hearing, did not rule on whether probable cause existed for Defendant's arrest. Defendant further argued that on the night of his arrest, he was not engaged in any activity that would provide Detective Edwards with probable cause necessary to justify his seizure. Accordingly, Defendant sought to have the trial court suppress the State's evidence derived from Defendant's seizure.

Relying on the transcript from the hearing on Defendant's first motion to suppress, Judge R. Stuart Albright denied the Supplemental Motion in an Order entered 1 October 2009. In this Order, the trial court incorporated the findings of fact from the previous hearing and concluded that Detective Edwards had "reasonable suspicion to justify his stop and detention of the Defendant," and had "probable cause to charge Defendant with resisting, delaying, or obstructing a public officer." Defendant filed a notice of intent to appeal the denial of the suppression motions prior to the entry of an *Alford* guilty plea, on 30 March 2010, to one count of possession with intent to sell and distribute cocaine.

## II. Jurisdiction & Standard of Review

Defendant has an appeal of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2009) and N.C. Gen. Stat. § 15A-979(b) (2009) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty."). We review the trial court's order regarding a motion to suppress to determine if competent evidence supports the trial court's findings of fact and whether the findings of fact support its conclusion of law. *State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (2007). The trial court's conclusions of law are subject to *de novo* review. *Id.*

### III. Analysis

Defendant argues the trial court erred in concluding the police had reasonable suspicion to conduct an investigatory stop and in denying his Motion to Suppress the State's evidence obtained pursuant to his unlawful seizure. We agree and reverse the trial court's Orders.

As an initial matter, we note Defendant incorrectly asserts he was seized at the moment Sergeant Austin exited his car and yelled, "Stop! Police[,]" and thereby violated his Fourth Amendment right to be free from unreasonable seizures. While a show of authority is required for a Fourth Amendment seizure to occur, that alone is not sufficient. See California v. Hodari D, 499 U.S. 621, 629, 113 L. Ed. 2d 690, 699 (1991) (explaining that even though an officer's pursuit constituted a show of authority enjoining the defendant to halt, because the defendant did not comply, he was not seized until he was tackled).

"An individual is seized by a police officer and is thus within the protection of the Fourth Amendment when the officer's conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." State v. Icard, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009) (quotation marks omitted) (citing Florida v. Bostick, 501 U.S. 429, 437, 115 L. Ed. 2d 389, 400 (1991)). Police conduct necessary for a seizure may include a "show of authority" that restrains an individual's freedom of movement. State v. Farmer, 333 N.C. 172, 187, 424 S.E.2d 120, 129 (1993). Such a show of authority includes, among other things, "the officer's words and tone of voice." Icard, 363 N.C. at 309, 677 S.E.2d at 827.

However, when a suspect does not yield after the police engage in a verbal show of authority, a seizure has not occurred. Hodari D, 499 U.S. at 621, 113 L. Ed. 2d at 694. In Hodari D, the United States Supreme Court stated:

> The word 'seizure' . . . . does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure . . . . An arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority.

Id. at 626, 113 L. Ed. 2d at 697.

In the present case, Defendant was not seized until Detective Edwards utilized physical force and "fell on top of him." Once seized,

Defendant was immediately arrested for resisting, delaying, and obstructing a public officer.

Both parties characterize the facts of this case as involving an investigatory stop of Defendant, requiring only reasonable suspicion that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968) (holding that where police observe conduct which leads them to reasonably conclude criminal activity may be afoot, they may conduct a brief investigatory stop). We conclude no investigatory stop occurred in the present case. Instead, Detective Edwards arrested Defendant when he "fell on top of him," and placed him in handcuffs for resisting, delaying, and obstructing a public officer.

An investigatory stop is a "brief stop of a suspicious individual[] in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617 (1972). Such a stop may only be justified by "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citation and quotation marks omitted). "Thus, a police officer must have developed more than an 'unparticularized suspicion or hunch' before an investigatory stop may occur." *State v. Willis*, 125 N.C. App. 537, 541, 481 S.E.2d 407, 410 (1997) (quoting *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70) (citation and quotation marks omitted) (emphasis added).

At the suppression hearing, Detective Edwards was asked, "What was the purpose of you jumping on top of [Defendant]?" He replied, to "[a]pprehend him for resist, delay, obstruct." When again asked by Defense counsel, "Okay. And you told [the prosecutor] that you jumped on [Defendant] to apprehend him for resisting a public officer?" He answered, "Yes."

We recognize that to effectuate an investigatory stop police officers may use means of restraint often associated with an arrest when such means are necessary to "maintain the status quo" or to ensure officer safety. *State v. Campbell*, 188 N.C. App. 701, 710, 656 S.E.2d 721, 728 (2008) (affirming the trial court's order finding the police were justified in handcuffing defendant during an investigatory stop). However, Detective Edwards' testimony at the suppression hearing confirms that he did not handcuff Defendant in order to conduct an investigatory stop, that is to "diligently pursue[] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant." *United*

*States v. Sharpe*, 470 U.S. 675, 686, 84 L. Ed. 2d 605, 616 (1985). Rather the officer testified he fell upon Defendant and handcuffed him with the intent to arrest Defendant for resisting, delaying, or obstructing, a public officer. *See* N.C. Gen. Stat. § 14-223 (2009) (making it a misdemeanor to "willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office").

Thus, Detective Edwards needed probable cause, not reasonable suspicion, in order to effectuate Defendant's warrantless arrest. *See State v. Mello*, 200 N.C. App. 561, 568, 684 S.E.2d 477, 482 (2009) (explaining that probable cause, not reasonable suspicion, is required before making an arrest), *aff'd*, 364 N.C. 421, 700 S.E.2d 224 (2010).

We find this case analogous to *State v. Sinclair*, 191 N.C. App. 485, 663 S.E.2d 866 (2008), and *State v. Joe*, No. 10-1037, ___ N.C. App. ___, ___ S.E.2d ___, 2011 WL 2732222 (July 5, 2011). In both cases, we concluded the defendants' flight from consensual encounters with the police, in high-crime areas, did not justify their arrest for resisting a public officer. *Sinclair*, 191 N.C. App. at 491, 663 S.E.2d at 871; *Joe*, ___ N.C. App. at ___, ___ S.E.2d at ___, 2011 WL 2732222, at *6.

In *Sinclair*, a police officer received a report of "drug activity" at a bowling alley, which was "a known drug activity area." 191 N.C. App. at 486-87, 663 S.E.2d at 869 (quotation marks omitted). The officer responded to the bowling alley in an unmarked car—with at least two marked vehicles present as well—and parked approximately sixteen to twenty feet from the defendant, who was sitting among a group of other men. *Id.* at 487, 663 S.E.2d at 869. The officer and another law enforcement agent exited the patrol car and walked toward Defendant. *Id.* The officer was wearing khaki pants and a polo shirt with an embroidered police badge on the front. *Id.* As the officer approached the defendant and said " '[L]et me talk to you,' " the defendant stood up took a couple of steps toward the officer and said, " 'Oh, you want to search me again, huh?' "; the officer had searched the defendant on at least one previous occasion. *Id.* The officer replied, " 'Yes, sir[,]" as he continued to walk toward the defendant. The Defendant " 'quickly shoved both of his hands in his front pockets and then removed them,' " balled his fists, and "took a defensive stance." *Sinclair*, 191 N.C. App. at 487, 663 S.E.2d at 869. As the officer got closer, the defendant said, " 'Nope. Got to go,' and 'took off running' across an adjacent vacant lot." *Id.* The police gave chase, quickly apprehended the defendant, and charged him with resisting a public officer, pursuant to N.C. Gen. Stat. § 14-223 (2007). *Sinclair*, 191 N.C. App. at 487, 663 S.E.2d at 869.

On appeal to this Court, we concluded the defendant's flight, viewed in the light most favorable to the State, did not give rise to reasonable suspicion that the defendant was involved in criminal activity, and was not sufficient to justify an investigatory stop. *Id.* at 491, 663 S.E.2d at 871. Rather, we concluded the encounter between the officer and the defendant was consensual and the defendant was free to ignore the officer's request. *Id.* at 490-91, 663 S.E.2d at 871 ("Although Defendant's subsequent flight may have contributed to a reasonable suspicion that criminal activity was afoot thereby justifying an investigatory stop, Defendant's flight from a consensual encounter cannot be used as evidence that Defendant was resisting, delaying, or obstructing [the officer] in the performance of his duties.").

Additionally, we concluded that had the officer in *Sinclair* been attempting to effectuate an investigatory stop of the defendant, the facts were not sufficient to give the officer "a reasonable, articulable suspicion" the defendant was involved in criminal activity. *Id.* at 491, 663 S.E.2d at 871 (noting the only articulated facts to support the investigatory stop were the report of drug activity, that the scene was a "known drug activity area," and that the officer made previous drug arrests in the area).

In *Joe*, the arresting officer testified that he was patrolling an area in which he had made "no less than 10 drug arrests" and had assisted with many more. ___ N.C. App. at ___, ___S.E.2d at ___, 2011 WL 2732222, at *1. The officer described that upon seeing the police van the defendant's eyes "got big" and he immediately turned and walked behind an apartment building. *Id.* at ___, ___, S.E.2d at ___, 2011 WL 2732222, at *2. The officer pursued the defendant yelling, "Police, stop[,]" but the defendant kept running. *Id.* After running for several blocks, the officer found defendant sitting beside an air-conditioning unit, as if he were trying to hide, manipulating something in one hand. *Id.* at ___, ___ S.E.2d at ___, 2011 WL 2732222, at *2. The officer ordered the defendant to put his hands up; he refused, and the officer arrested the defendant for resisting a public officer. *Id.* at ___, ___ S.E.2d at ___, 2011 WL 2732222, at *2.

On appeal, we cited *Sinclair* and concluded that prior to the defendant's flight the encounter was consensual and a "reasonable person would have felt at liberty to ignore [the officer's] presence and go about his business." *Joe*, ___ N.C. at ___, ___ S.E.2d at ___, 2011 WL 2732222, at *6 (affirming the trial court's dismissal of the charge for resisting, delaying, or obstructing the officer as the defendant's

flight from a consensual encounter cannot be used as evidence for that offense).

Similarly, in the present case the only articulable facts to support an investigatory stop were that the police officers were responding to a complaint of loud music and Detective Edwards regarded the area as a high-crime area in which he had made previous drug arrests. Detective Edwards testified that he did not see Defendant engaged in any suspicious activity and did not see any device capable of producing loud music. Defendant was merely standing outside at night, with two or three other men. In fact, Detective Edwards testified that he stopped his car because "that was the only intersection near Coates and Shaw that had people standing at it[,] which is why [he and Sergeant Austin] were going to get out and find out about the loud music." These facts do not provide reasonable suspicion necessary to justify an investigatory stop of Defendant. As such, the encounter that Detective Edwards was attempting to make with Defendant would have been a consensual encounter, an encounter that Defendant would have been free to ignore. *See Sinclair*, 191 N.C. App. at 490-91, 663 S.E.2d at 871. Had the officers attempted an investigatory stop on these facts, the stop would be unlawful. *Id.* As such, the officer would not have been "attempting to discharge a duty of his office," an essential element of the statutory offense of resisting, delaying, or obstructing a public officer, and Defendant's subsequent arrest was unlawful. N.C. Gen. Stat. § 14-223; *Sinclair*, 191 N.C. App. at 489-90, 663 S.E.2d at 870 ("If [the attempted investigatory stop] was unlawful, there was insufficient evidence that [the police officer] was discharging or attempting to discharge a duty of his office."). Furthermore, Defendant's subsequent flight from a consensual encounter or from an unlawful investigatory stop cannot be used to justify his arrest for resisting, delaying, or obstructing a public officer. *See Sinclair*, 191 N.C. App. at 489-90, 663 S.E.2d at 870; *Joe*, —— N.C. at ___, ___ S.E.2d at___, 2011 WL 2732222, at *6.

As the State acknowledges, mere presence in a high-crime area is not sufficient to create reasonable suspicion that the person is involved in criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 119, 145 L. Ed. 2d 570, 573-74 (2000); *see State v. Butler*, 331 N.C. 227, 234, 415 S.E.2d 719, 722-23 (1992) (stating the fact that the defendant was congregating with others on a corner known for drug-related activity did not justify an investigatory stop). The State also correctly notes that presence in a suspected drug area, coupled with evasive action, may provide the reasonable suspicion necessary for an investigatory

stop. *Butler*, 331 N.C. at 234, 415 S.E.2d at 722-23 (noting the "additional circumstance—defendant's immediately leaving the corner and walking away from the officers after making eye contact with them" justified the investigatory stop); *State v. Willis*, 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997) (noting that because the defendant exited a suspected drug house, exhibited "nervous behavior," and "took evasive action when he knew he was being followed" an investigatory stop was justified). The State therefore argues Defendant's flight from the scene justified an investigatory stop.

However, the State has failed to establish a nexus between Defendant's flight and the police officers' presence. The State has provided no evidence that Defendant's flight was in response to the officer's presence. *Cf. Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576 (defendant fled "upon noticing the police"); *Butler*, 331 N.C. at 234, 415 S.E.2d at 722-23 (defendant fled "after making eye contact" with the police); *Willis*, 125 N.C. App. at 542, 481 S.E.2d at 411 (defendant took evasive action after discovering he was being followed). Here, the officers arrived in an unmarked car, after dark, and parked thirty-five feet away from Defendant on the opposite side of a dumpster. There was no testimony to indicate whether Defendant knew the police were present before he began running. There was no testimony that Defendant made eye contact with the officers, or even looked in the direction of the officers. And there was no testimony as to whether other cars were passing by. That the officers were responding to a complaint of loud music and did not see any evidence of a radio near Defendant indicates that some other activity was occurring in the area to which Defendant could have been reacting. To conclude the officers were justified in effectuating an investigatory stop, on these facts, would render any person who is unfortunate enough to live in a high-crime area subject to an investigatory stop merely for the act of running.

### IV. Conclusion

We conclude the circumstances did not provide the officers with reasonable suspicion necessary to justify an investigatory stop of Defendant or probable cause for Defendant's arrest. Consequently, the trial court erred in denying Defendant's Motions to Suppress and the trial court's Orders are

Reversed.

Judges STROUD and THIGPEN concur.