IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1089

 Filed: 3 September 2019

Chowan County, No. 16 CRS 050264

STATE OF NORTH CAROLINA

 v.

KENNETH TYRELL HOLLEY, Defendant.

 Appeal by Defendant from judgment entered 2 February 2018 by Judge

Wayland J. Sermons, Jr. in Chowan County Superior Court. Heard in the Court of

Appeals 10 April 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Asher P.
 Spiller, for the State.

 Sarah Holladay for defendant-appellant.

 MURPHY, Judge.

 A defendant’s flight from a lawful investigatory stop may provide law

enforcement officers with probable cause to arrest the defendant for resisting,

delaying, or obstructing a public officer. However, a defendant’s flight from a

consensual encounter with officers or from an unlawful investigatory stop that is

unsupported by reasonable suspicion does not provide an officer with probable cause

to arrest the defendant for that offense. Here, the officer lacked reasonable suspicion

to effect a lawful investigatory stop; thus, Defendant’s flight from that encounter did
 STATE V. HOLLEY

 Opinion of the Court

not provide the officer with probable cause to arrest him for resisting, delaying, or

obstructing a public officer. Defendant’s arrest was therefore unlawful and in

violation of the Fourth Amendment.

 Evidence obtained as a result of an unlawful seizure is generally inadmissible

in a criminal prosecution of the individual subjected to unconstitutional conduct.

However, property voluntarily abandoned by a defendant before a seizure has

occurred is not fruit of that seizure and may be admitted as evidence. A person is not

seized while in flight from an unlawful investigatory stop, but rather only when that

person submits to the show of authority. The evidence at trial established that the

firearm sought to be admitted by the State was voluntarily abandoned by Defendant

prior to him being seized by officers. Defendant fails to show error, much less plain

error, in its admission at trial.

 BACKGROUND

 On 14 June 2016, Police Chief Jay Fortenbery (“Chief Fortenbery”) of the

Edenton Police Department received a call from an informant from whom he had

previously received information approximately two to three times. The informant

reported that “a drug deal had just gone down at the corner store which is located at

Granville Street and Carteret Street and that two guys had left walking that were

involved in it and they were headed down Granville Street.” The informant described

the two men as “two black males” and that “one was wearing a black T-shirt and one

 -2-
 STATE V. HOLLEY

 Opinion of the Court

was wearing a white shirt.” Chief Fortenbery was familiar with the area described

by the informant, stating, “[w]e have had several arrests at that location for narcotics

in the area” and that he recalled three narcotics arrests he personally made in that

area.

 Chief Fortenbery sent out a radio transmission to other officers regarding

reported suspicious activity near the corner store. Chief Fortenbery did not

communicate the identity of the informant, his or her reliability, or the contents of

what the informant reported. Officer Jeff Church (“Officer Church”), also of the

Edenton Police Department, was approximately three blocks away from that location

and responded to Chief Fortenbery’s radio transmission. Officer Church was also

familiar with the area, having responded to issues at that location ranging from

“loitering” and “loud music” to “shots fired” at a vehicle. Upon arriving at the location

in his marked patrol car, Officer Church observed “two black males, one wearing a

white shirt, [and] one wearing a black shirt walking [on the sidewalk] towards North

Broad Street away from the store.” Officer Church stated the men saw him arrive

and park in his marked patrol car. The man in the white shirt, later identified as

Defendant, walked to the driveway of a home and “went to the first door that was

available[.]” As Defendant was touching the door handle of the home, Officer Church

yelled for Defendant to stop, at which time Defendant looked at Officer Church and

ran.

 -3-
 STATE V. HOLLEY

 Opinion of the Court

 As Officer Church gave chase, Defendant attempted to jump over a fence in a

wooded area north of the home. After an unsuccessful attempt, Defendant “pulled

out a handgun out of his waistband[,]” and Officer Church could see the firearm in

Defendant’s right hand. Officer Church radioed other officers and reported that

Defendant had a firearm and provided the officers with a description of Defendant

and the direction in which Defendant was traveling. Defendant again attempted to

jump the fence and was successful, causing Officer Church to lose sight of Defendant

as he fled.

 Officer Austin Wynn (“Officer Wynn”) responded to the “radio traffic” about

these events and went to the street Officer Church reported Defendant was heading

towards. Officer Wynn did not see Defendant and returned to the street where

Defendant was initially seen before fleeing. On this street, Officer Wynn observed

Defendant walking and noted that Defendant “was very sweaty[] and had a lot of

grass on him from head to toe.” Officer Wynn asked Defendant to stop and provide

identification, and Defendant continued to walk. After Officer Wynn asked

Defendant to stop “a few more times[,]” Defendant did so. Officer Wynn contacted

Officer Church over the radio, and Officer Church joined Officer Wynn and

Defendant. Officer Church confirmed Defendant was the individual who fled.

Defendant was placed under arrest for resisting, delaying, or obstructing a public

officer. The firearm was not found on Defendant’s person.

 -4-
 STATE V. HOLLEY

 Opinion of the Court

 The K-9 unit was called in to assist in the search along the “flight path” for the

firearm Officer Church observed on Defendant’s person. A black firearm was “tucked

up underneath a shed, an outbuilding, and there was foliage overtop of it.” Defendant

was subsequently indicted on 18 July 2016 for possession of a firearm by a felon, and

the State later dismissed the resisting, delaying, or obstructing a public officer

charge. Defendant filed a motion to suppress evidence which the trial court denied

after a pretrial hearing. Defendant did not object to the introduction of the evidence

at trial. A jury convicted Defendant of being a felon in possession of a firearm, and

the trial court sentenced Defendant to 22 to 36 months’ imprisonment. Defendant

gave oral notice of appeal.

 ANALYSIS

 A. Standard of Review

 When a defendant challenges the denial of a motion to suppress evidence, our

review is limited to determining “whether competent evidence supports the trial

court’s findings of fact and whether the findings of fact support the conclusions of

law.” State v. Biber, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011). If supported

by competent evidence, the trial court’s findings of fact are conclusive on appeal “even

if the evidence is conflicting.” State v. Hammonds, 370 N.C. 158, 161, 804 S.E.2d 438,

441 (2017) (citation and internal quotation marks omitted). Similarly, unchallenged

findings of fact are binding on appeal. Biber, 365 N.C. at 168, 712 S.E.2d at 878.

 -5-
 STATE V. HOLLEY

 Opinion of the Court

“Conclusions of law are reviewed de novo and are subject to full review.” Id. Under

a de novo review, we consider the matter anew, freely substituting our own judgment

for that of the trial court. Id.

 Generally, when a defendant fails to object to the admission of evidence at trial,

he or she completely waives appellate review of his or her Fourth Amendment claims

regarding that evidence. See State v. Miller, 371 N.C. 266, 273, 814 S.E.2d 81, 85

(2018). However, where a defendant has moved to suppress evidence and “both sides

have fully litigated the suppression issue at the trial court stage,” but the defendant

fails to object to its admission at trial, we apply plain error review. Id. at 272, 814

S.E.2d at 85; State v. Grice, 367 N.C. 753, 755, 764, 767 S.E.2d 312, 315, 320, cert.

denied, ___ U.S. ___, 192 L. Ed. 2d. 882 (2015). Here, Defendant filed a motion to

suppress the firearm but failed to object to its admission at trial. Accordingly, we

review for plain error.

 Our Supreme Court has established the plain error standard of review:

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice—that, after examination of the entire
 record, the error had a probable impact on the jury's
 finding that the defendant was guilty. Moreover, because
 plain error is to be applied cautiously and only in the
 exceptional case, the error will often be one that seriously
 affects the fairness, integrity or public reputation of
 judicial proceedings.

 -6-
 STATE V. HOLLEY

 Opinion of the Court

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations,

alterations, and internal quotation marks omitted).

 B. Denial of Defendant’s Motion to Suppress

 The trial court denied Defendant’s motion to suppress the firearm, concluding

the arrest for resisting, delaying, or obstructing a public officer was supported by

probable cause and that the evidence seized was available for trial. We conclude the

trial court erred in its conclusion that the arrest was supported by probable cause.

1. Legal Principles

 The Fourth Amendment protects “[t]he right of the people to be secure in their

persons . . . against unreasonable . . . seizures.” U.S. Const. amend. IV. An arrest is,

of course, a seizure protected by the Fourth Amendment, and law enforcement officers

who make a warrantless arrest are required to have probable cause that the

individual has committed a criminal offense. Biber, 365 N.C. at 168, 712 S.E.2d at

879. “Probable cause is defined as those facts and circumstances within an officer’s

knowledge and of which he had reasonably trustworthy information which are

sufficient to warrant a prudent man in believing that the suspect had committed or

was committing an offense.” Id. at 168-69, 712 S.E.2d at 879 (citation and internal

quotations marks omitted); Beck v. Ohio, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964).

While probable cause “does not demand any showing that such a belief be correct or

more likely true than false” and only requires a “practical, nontechnical probability[,]”

 -7-
 STATE V. HOLLEY

 Opinion of the Court

Texas v. Brown, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514 (1983) (citation and internal

quotation marks omitted), “a finding of probable cause must be supported by more

than mere suspicion.” State v. Simmons, 201 N.C. App. 698, 706, 688 S.E.2d 28, 33

(2010). We look to the totality of the circumstances in determining whether the

arresting officer had probable cause to arrest the individual. Illinois v. Gates, 462

U.S. 213, 230-31, 76 L. Ed. 2d 527, 543-44 (1983).

 N.C.G.S. § 14-223 makes it a criminal offense for an individual to “willfully and

unlawfully resist, delay or obstruct a public officer in discharging or attempting to

discharge a duty of his office[.]” N.C.G.S. § 14-223 (2017). “The conduct proscribed

under [N.C.G.S. §] 14-223 is not limited to resisting an arrest but includes any

resistance, delay, or obstruction of an officer in the discharge of his duties.” State v.

Lynch, 94 N.C. App. 330, 332, 380 S.E.2d 397, 398 (1989). “For example, [we have]

concluded that flight from a lawful investigatory stop may provide probable cause to

arrest an individual for violation of N.C.G.S. § 14-223.” State v. Washington, 193 N.C.

App. 670, 679, 668 S.E.2d 622, 628 (2008) (citation, alteration, and internal quotation

marks omitted) (emphasis added).

 In Washington, a detective was conducting surveillance when she discovered

that a vehicle had an expired registration and no liability insurance. Id. at 672-73,

668 S.E.2d at 624. The detective approached the vehicle, displaying her badge and

announcing herself as a detective. Id. at 681, 668 S.E.2d at 629. The driver asked

 -8-
 STATE V. HOLLEY

 Opinion of the Court

the detective “what she wanted[,]” and the detective indicated that defendant’s

passenger “had warrants” and was being placed under arrest. Id. The driver stated,

“Well, if y’all need him, then you don’t need me . . . and then proceeded to walk away.”

Id. After the detective instructed the defendant to stop multiple times, the defendant

“took off running.” Id. We held that the detective had a right to make an

investigatory stop of the driver based upon reasonable suspicion of criminal activity

given his “operation of a motor vehicle with no insurance and with an expired

registration plate.” Id. at 681-82, 668 S.E.2d at 629. It was this flight from a lawful

investigatory stop that provided the probable cause for the defendant to be arrested

for violating N.C.G.S. § 14-223. Id. at 682, 668 S.E.2d at 630.

 In contrast, an individual’s “flight from a consensual encounter or from an

unlawful investigatory stop [lacking reasonable suspicion] cannot be used to justify

his arrest for resisting, delaying, or obstructing a public officer.” State v. White, 214

N.C. App. 471, 479, 712 S.E.2d 921, 927-28 (2011).

 The Fourth Amendment does not prohibit law enforcement officers from

generally asking questions of an individual, “even when officers have no basis for

suspecting” that individual. Florida v. Bostick, 501 U.S. 429, 434-35, 115 L. Ed. 2d

389, 398 (1991). Just as officers may pose questions to an individual in such a

manner, the individual may decline to answer those questions and go about his or her

business. Id. at 434, 115 L. Ed. 2d at 398. However, when the officers conduct would

 -9-
 STATE V. HOLLEY

 Opinion of the Court

communicate “to a reasonable person that he was not at liberty to ignore the police

presence and go about his business[,]” the encounter loses its consensual nature and

requires reasonable suspicion to support the investigatory stop. Id. at 437, 115 L. Ed.

2d at 400 (citation and internal quotation marks omitted).

 An officer has the reasonable suspicion necessary to effectuate an investigatory

stop “if a reasonable, cautious officer, guided by his experience and training, would

believe that criminal activity is afoot based on specific and articulable facts, as well

as the rational inferences from those facts.” State v. Williams, 366 N.C. 110, 116, 726

S.E.2d 161, 167 (2012) (citation and internal quotation marks omitted). In describing

the reasonable suspicion standard, the United States Supreme Court has stated:

 The reasonable suspicion necessary to justify [a brief
 investigatory stop] is dependent upon both the content of
 information possessed by police and its degree of
 reliability. The standard takes into account the totality of
 the circumstances – the whole picture. Although a mere
 hunch does not create reasonable suspicion, the level of
 suspicion the standard requires is considerably less than
 proof of wrongdoing by a preponderance of the evidence,
 and obviously less than is necessary for probable cause.

Navarette v. California, 572 U.S. 393, 397, 188 L. Ed. 2d 680, 686 (2014) (citations

and internal quotation marks omitted).

 In White, law enforcement officers responded to a complaint of loud music in

an area that a detective regarded as “a high-crime area in which he had made

previous drug arrests.” White, 214 N.C. App. at 479, 712 S.E.2d at 927. The

 - 10 -
 STATE V. HOLLEY

 Opinion of the Court

defendant was standing near a dumpster at an intersection with two or three other

men. Id. at 472, 712 S.E.2d at 923. As the detective exited the patrol vehicle, he

heard another officer yell “Stop! Police,” at which time the defendant “took off running

around the back side of the vehicle.” Id. The officers gave chase and arrested the

defendant for resisting, delaying, or obstructing a public officer. Id. at 472-73, 712

S.E.2d at 923-24.

 We stated:

 [T]he only articulable facts to support an investigatory stop
 were that the police officers were responding to a complaint
 of loud music and [the detective] regarded the area as a
 high-crime area in which he had made previous drug
 arrests. [The detective] testified that he did not see [the
 defendant] engaged in any suspicious activity and did not
 see any device capable of producing loud music. [The
 d]efendant was merely standing outside at night, with two
 or three other men.

Id. at 479, 712 S.E.2d at 927. Although the State correctly noted that “presence in a

suspected drug area, coupled with evasive action, may provide the reasonable

suspicion necessary for an investigatory stop,” we held the State “failed to establish

a nexus between [the defendant’s] flight and the police officers’ presence” because the

State “provided no evidence that [the defendant’s] flight was in response to the

officer’s presence.” Id. at 479-80, 712 S.E.2d at 928. Accordingly, we held that these

facts did not support the reasonable suspicion necessary to justify an investigatory

stop, and as such, the encounter that the detective was attempting to make with the

 - 11 -
 STATE V. HOLLEY

 Opinion of the Court

defendant, “would have been a consensual encounter, an encounter that [the

defendant] would have been free to ignore.” Id. at 479, 712 S.E.2d at 927.

2. Findings of Fact

 In denying Defendant’s motion to suppress, the trial court made the following

relevant Findings of Fact:

 1. On or about June 14, 2016, Chief Jay Fortenbery of the
 Edenton Police Department received a phone call about
 possible drug activity taking place at a store located on the
 corner of N. Granville Street and Carteret Street.

 2. The caller provided information about the vehicle
 involved in the possible drug activity as well as the
 description of two individuals walking away from the
 location.

 3. The caller stated that the two men walking away, on foot,
 were two black males and one was wearing a white shirt.

 4. Chief Fortenbery relayed the information to the patrol
 officers over the radio and then spoke with Officer Church
 on the phone to give him a description of the individuals.

 5. Officers Wynn and Church responded to the area of the
 call once hearing it over the radio.

 6. This area had been the scene of several drug
 investigations and shootings in the previous months.

 7. Officer Church noticed two individuals matching the
 description walking towards N. Broad Street near the
 home of [] W. Carteret Street.

 8. The individual wearing the white shirt, later identified
 as the defendant, began walking briskly away from Officer
 Church when he exited his marked patrol vehicle.

 - 12 -
 STATE V. HOLLEY

 Opinion of the Court

 9. The defendant reached the backdoor of the house on []
 W. Carteret St. when Officer Church asked him to stop and
 to provide him some identification.

 10. Defendant then took off running towards W. Freemason
 Street and Officer Church pursued him on foot.

 Defendant contends Finding of Fact 6, which states that the area described in

the tip by the informant “had been the scene of several drug investigations and

shootings in the previous months[,]” is unsupported by competent evidence. Chief

Fortenbery testified at the suppression hearing that he had been with the Edenton

Police Department for approximately seven years when the incident in question

occurred. When asked how many narcotics arrests he had experience with in this

area, he answered “about three just from memory” for “drugs, marijuana.” Chief

Fortenbery did not testify that these arrests took place in the past several months.

Officer Church testified that his “very first call was for shots fired . . . where a car

had been shot several times[.]” Since that time, the issues he had responded to in

that area were for “loitering [and] loud music.”

 We agree with Defendant that this evidence does not support the trial court’s

finding of fact. While Chief Fortenbery testified that he had experience with “several”

drug arrests in the area, he did not testify when those arrests had taken place over

the seven years he had been with the Edenton Police Department. Additionally,

Officer Church testified that he had responded to only one shooting during his time

 - 13 -
 STATE V. HOLLEY

 Opinion of the Court

with the department and did not indicate when that incident occurred. Accordingly,

while there was evidence that there had been drug arrests in the area at some point

in the preceding seven years and one shooting in the preceding two years, the

evidence does not support the trial court’s finding that there had been “several drug

investigations and shootings in the previous months.”

 Defendant also contests Finding of Fact 8, which states, “The individual

wearing the white shirt, later identified as the defendant, began walking briskly

away from Officer Church when he exited his marked patrol vehicle.” In particular,

Defendant argues the term “walking briskly away” is unsupported by competent

evidence. At the suppression hearing, Officer Church testified that when he

responded to the area he observed two black males, one in a white shirt and another

in a black shirt, walking. Specifically, Officer Church testified that the man later

identified as Defendant was “just walking down the sidewalk” in front of his patrol

car and in the direction away from the patrol car. Additionally, Officer Church

testified that when he exited his patrol vehicle, the two males were already on private

property.

 We agree with the State that Officer Church did not have to explicitly use the

term “briskly” in his testimony for this finding of fact to be supported by competent

evidence. However, the above evidence cannot support such a characterization of

Defendant’s actions. Officer Church did not testify that Defendant was walking in

 - 14 -
 STATE V. HOLLEY

 Opinion of the Court

an unusual manor in response to his presence, such as with speed. Rather he simply

stated that Defendant was “just walking down the sidewalk” in a direction away from

the patrol vehicle. The State argues that Officer Church’s testimony at trial that

Defendant “kept walking away from me faster and faster” supports the trial court’s

finding of fact; however, this testimony was not before the trial court at the

suppression hearing from which the trial court made its findings of fact. The

competent evidence that was presented at the suppression hearing does not support

this finding of fact.

3. Conclusions of Law

 The trial court made the following Conclusions of Law based on its Findings of

Fact:

 1. Based on the Totality of the Circumstances, officers had
 Reasonable Suspicion to stop and Probable Cause to arrest
 Defendant.

 2. There were no violations of State or Federal law.

 3. Evidence seized is available for trial.

 Assuming arguendo that Officer Church’s directive for Defendant to “stop”

was not a consensual encounter which Defendant would have been free to ignore, but

rather an attempt to effectuate an investigatory stop, we first address whether Officer

Church had a reasonable, articulable suspicion that criminal activity was afoot at

that time. The State points us to our caselaw holding “when an individual’s presence

 - 15 -
 STATE V. HOLLEY

 Opinion of the Court

at a suspected drug area is coupled with evasive actions, police may form, from those

actions, the quantum of reasonable suspicion necessary to conduct an investigatory

stop[,]” State v. Willis, 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997), to support

the trial court’s conclusion that Officer Church had reasonable suspicion when he told

Defendant to stop. While this is a correct statement of law, the trial court’s supported

findings of fact in the present case do not support such a conclusion.

 An individual’s presence in a high-crime area alone is insufficient to “create

reasonable suspicion that the person is involved in criminal activity.” White, 214 N.C.

App. at 479, 712 S.E.2d at 928. When the State seeks to also show evasive action by

a defendant, it must “establish a nexus between Defendant’s flight and the police

officers’ presence.” Id. at 480, 712 S.E.2d at 928. That is, the defendant’s flight or

other evasive actions must be in response to the officer’s presence. See State v. Butler,

331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992) (“[U]pon making eye contact with the

uniformed officers, defendant immediately moved away, behavior that is evidence of

flight[.]”); State v. Mello, 200 N.C. App. 437, 446-47, 684 S.E.2d 483, 490 (2009) (“After

[the officer] became suspicious and approached [the defendant] and the two

pedestrians, the two pedestrians fled and [the d]efendant began to drive off.”). The

defendant must be evading the officers.

 For example, in State v. Jackson, 368 N.C. 75, 772 S.E.2d 847 (2015), the

defendant “stood at 9:00 p.m. in a specific location known for hand-to-hand drug

 - 16 -
 STATE V. HOLLEY

 Opinion of the Court

transactions that had been the site of many narcotics investigations” when he and

another individual “split up and walked in opposite directions upon seeing a marked

police vehicle approach; they came back very near to the same location once the patrol

car passed; and they walked apart a second time upon seeing” the officer’s return. Id.

at 80, 772 S.E.2d at 850. Our Supreme Court held that the defendant’s evasive

actions, coupled with his presence in a high-crime area, provided the officer with a

reasonable suspicion that the defendant was involved in criminal activity. Id. at 80,

772 S.E.2d at 850-51.

 Similarly, in State v. Goins, 248 N.C. App. 265, 789 S.E.2d 466 (2016) (Tyson,

J., dissenting), rev’d per curiam for reasons stated in the dissent, 370 N.C. 157, 804

S.E.2d 449 (2017), the defendant was driving a vehicle that pulled into an apartment

complex parking lot that was in “a high drug and crime-ridden area.” Id. at 282, 789

S.E.2d at 477. As the car came around the corner, an individual, who appeared to be

waiting on the vehicle, looked at the officers in their marked patrol vehicle and “yelled

something [to the vehicle], which caused them to speed up and leave the complex”

while the individual went back into an apartment. Id. at 280, 789 S.E.2d at 476. In

light of the defendant’s presence in a high-crime area and that officers observed the

defendant “accelerate and quickly exit the . . . apartment complex and flee the area”

after he was “warned[,]” the officers had reasonable suspicion that criminal activity

was afoot. Id. at 283-84, 789 S.E.2d at 477-78.

 - 17 -
 STATE V. HOLLEY

 Opinion of the Court

 Here, the trial court’s finding of fact that Defendant “briskly” walked away

from Officer Church’s marked patrol vehicle was unsupported by competent evidence.

Thus, the evidence presented at the suppression hearing only established the

following: Defendant and the other individual were walking down Carteret Street

away from a store when Officer Church arrived in his marked patrol vehicle. When

Officer Church parked his patrol vehicle, he stated Defendant continued “just

walking down the sidewalk” in front of the patrol vehicle and in the direction away

from the patrol vehicle.

 While the evidence established that Defendant was aware of Officer Church’s

presence in the marked patrol vehicle, the evidence does not establish that Defendant

attempted to evade Officer Church. There was no testimony that Defendant changed

his actions in response to his becoming aware of Officer Church’s presence. There

was no testimony that Defendant changed the direction in which he was walking

before Officer Church arrived or altered his course in any way after Officer Church’s

arrival. Rather, the evidence established that Defendant was walking down the

sidewalk and continued on his path. See State v. Fleming, 106 N.C. App. 165, 170-

71, 415 S.E.2d 782, 785 (1992) (stating it is “neither unusual nor suspicious that they

chose to walk in a direction which led away from the group of officers”). This evidence

does not establish a nexus between Defendant’s act of walking in a direction away

from the patrol vehicle and Officer Church’s presence and stands in contrast to the

 - 18 -
 STATE V. HOLLEY

 Opinion of the Court

types of evasive actions found in Jackson and Goins. Defendant’s actions were not

evasive.

 Even if we were to conclude that the area in which this incident took place was

a high-crime area, this alone is insufficient to create reasonable suspicion that

Defendant was engaged in criminal activity. To hold otherwise would be to justify

investigatory stops on persons merely because they are walking in the neighborhood

in which they live. Without evasive actions or other incriminating circumstances 1,

Officer Church was left with no more than an unparticularized suspicion or hunch.

The Fourth Amendment does not so permit. See United States v. Sokolow, 490 U.S.

1, 7, 104 L. Ed. 2d 1, 10 (1989) (Reasonable suspicion requires something more than

an “unparticularized suspicion or hunch.”).

 The totality of the circumstances indicate that Officer Church lacked a

reasonable, articulable suspicion that criminal activity was afoot when he directed

Defendant to stop. As such, Defendant was not fleeing from a lawful investigatory

 1 The State briefly notes that Officer Church “had a tip from an informant giving a description
of Defendant and another man, which Officer Church corroborated with his own observations.” The
State does not further argue whether the tip should be considered anonymous or make any arguments
as to its reliability. Nevertheless, the tip cannot be considered in determining whether Officer Church
had a reasonable suspicion that Defendant was engaged in criminal activity because it was a fact
unknown to Officer Church. See State v. Peck, 305 N.C. 734, 741, 291 S.E.2d 637, 641-42 (1982) (“The
search or seizure is valid when the objective facts known to the officer meet the standard required.”).
Chief Fortenbery testified that he did not tell Officer Church and other officers listening to the radio
call that the reported suspicious activity came from an informant. Indeed, Officer Church testified
that he received the radio transmission from Chief Fortenbery that merely “said there was some
suspicious activity going down at Pearls Tobacco Plus[.]” Because we measure the reasonableness of
an officer’s suspicion by facts known to the officer when making the stop, we do not consider the
informant’s tip here.
 .

 - 19 -
 STATE V. HOLLEY

 Opinion of the Court

stop. The trial court therefore erred in its order denying the motion to suppress when

it concluded there was probable cause to arrest Defendant for resisting, delaying, or

obstructing a public officer.

 C. Admission of the Abandoned Firearm

 Despite the trial court’s error in its reasoning for denying Defendant’s motion

to suppress, Defendant has failed to show that the admission of the firearm as

evidence was error, much less plain error, as it was not the fruit of the eventual

seizure.

 The Fourth Amendment protects individuals from unreasonable seizures. U.S.

Const. amend. IV. “Fourth Amendment rights are enforced primarily through ‘the

exclusionary rule,’ which provides that evidence derived from an unconstitutional . .

. seizure is generally inadmissible in a criminal prosecution of the individual

subjected to the constitutional violation.” State v. McKinney, 361 N.C. 53, 58, 637

S.E.2d 868, 872 (2006). However, where there has been no seizure within the

meaning of the Fourth Amendment, the Fourth Amendment affords no protection.

“Only evidence discovered as a result of unconstitutional conduct constitutes fruit of

the poisonous tree” and is excludable. Id. (citation and internal quotation marks

omitted) (emphasis added).

 The United States Supreme Court has stated that a seizure occurs within the

meaning of the Fourth Amendment “[o]nly when the officer, by means of physical

 - 20 -
 STATE V. HOLLEY

 Opinion of the Court

force or show of authority, has in some way restrained the liberty of a citizen . . . .”

Terry v. Ohio, 392 U.S. 1, 19 n. 16, 20 L. Ed. 2d 889, 904-05 (1968). The Supreme

Court in California v. Hodari D., 499 U.S. 621, 113 L. Ed. 2d. 690 (1991), established

when a seizure occurs pursuant to a show of authority absent physical force. Id. at

626, 113 L. Ed. 2d at 697. In such circumstances, a seizure occurs only when there

has been both a show of authority from law enforcement officers and “submission to

the assertion of authority” by the individual. Id.; see also State v. Leach, 166 N.C.

App. 711, 603 S.E.2d 831 (2004) (holding that no seizure occurred until the defendant

was physically restrained).

 In determining whether there has been a show of authority by a law

enforcement officer, “the crucial test is whether, taking into account all of the

circumstances surrounding the encounter, the police conduct would have

communicated to a reasonable person that he was not at liberty to ignore the police

presence and go about his business.” Bostick, 501 U.S. at 437, 115 L. Ed. 2d at 400

(citation and internal quotation marks omitted). Relevant circumstances to be

considered “include, but are not limited to, the number of officers present, whether

the officer displayed a weapon, the officer’s words and tone of voice, any physical

contact between the officer and the individual, whether the officer retained the

individual’s identification or property, the location of the encounter, and whether the

 - 21 -
 STATE V. HOLLEY

 Opinion of the Court

officer blocked the individual’s path.” State v. Icard, 363 N.C. 303, 309, 677 S.E.2d

822, 827 (2009).

 Yet, a show of authority is “a necessary, but not a sufficient, condition for

seizure . . . effected through a ‘show of authority.’” Hodari D., 499 U.S. at 628, 113 L.

Ed. 2d. at 698. When it is not clear that the individual actually submitted to the law

enforcement officer’s show of authority, a court must determine the moment of

submission, for, without actual submission, there is only an attempted seizure for

which the Fourth Amendment provides no protection. See Brendlin v. California, 551

U.S. 249, 254, 168 L. Ed. 2d. 132, 138 (2007). “[W]hat may amount to submission

depends on what a person was doing before the show of authority: a fleeing man is

not seized until he is physically overpowered, but one sitting in a chair may submit

to authority by not getting up to run away.” Id. at 262, 168 L. Ed. 2d. at 142.

 In Hodari D., law enforcement officers approached a group of individuals that

included the defendant. Hodari D., 499 U.S. at 622-23, 113 L. Ed. 2d at 695. As the

officers approached, the defendant fled and officers gave chase. Id. at 623, 113 L. Ed.

2d. at 695. As the defendant was running from an officer, “he tossed away what

appeared to be a small rock.” Id. The officer tackled and handcuffed him a moment

later and subsequently discovered the discarded rock to be cocaine. Id. The United

States Supreme Court held that the defendant had not submitted to any assumed

show of authority until he was tackled, and he was not seized under the Fourth

 - 22 -
 STATE V. HOLLEY

 Opinion of the Court

Amendment until that moment. Thus, “[t]he cocaine abandoned while he was

running was . . . not the fruit of a seizure . . . .” Id. at 629, 113 L. Ed. 2d at 699.

 The facts in the case before us are indistinguishable from those in Hodari D.

Here, Officer Church directed Defendant to stop, and Defendant looked at Officer

Church and fled. Officer Church gave chase and lost sight of Defendant when

Defendant jumped over a fence. Officer Wynn eventually located Defendant walking

down Carteret Street, where Defendant was then stopped and eventually arrested for

resisting, delaying, or obstructing a public officer. Assuming Officer Church’s

directive for Defendant to stop was a show of authority, Defendant did not submit to

that authority until his eventual interaction with Officer Wynn on Carteret Street.

 At trial, Officer Church testified that the firearm was not recovered from

Defendant when he was detained on Carteret Street. Rather, a K-9 unit was

dispatched to search for the firearm that Officer Church observed along Defendant’s

“flight path.” It was along Defendant’s “flight path” after he ran from Officer Church

that the K-9 unit recovered a firearm “underneath a shed, an outbuilding, [with]

foliage overtop of it.” Accordingly, Defendant voluntarily abandoned the firearm

before he was seized by law enforcement officers. See State v. Leach, 166 N.C. App.

711, 717, 603 S.E.2d 831, 835 (2004), appeal dismissed, 359 N.C. 640, 614 S.E.2d 538

(2005). The Fourth Amendment does not bar “the Government’s appropriation of

 - 23 -
 STATE V. HOLLEY

 Opinion of the Court

such abandoned property.” See Abel v. United States, 362 U.S. 217, 241, 4 L. Ed. 2d.

668, 687 (1960).

 Defendant is correct that when an individual “discards property as the product

of some illegal police activity, he will not be held to have voluntarily abandoned the

property or to have necessarily lost his reasonable expectation of privacy with respect

to it[.]” State v. Cromartie, 55 N.C. App. 221, 225, 284 S.E.2d 728, 731 (1981) (citing

State v. Cooke, 54 N.C. App. 33, 282 S.E.2d 800 (1981)); see also State v. Joe, 222 N.C.

App. 206, 730 S.E.2d 779 (2012) (holding that contraband that was seized as a result

of an unlawful seizure was properly suppressed). However, this principle is

inapplicable here. Defendant had not yet submitted to a show of authority and was

thus not seized within the meaning of the Fourth Amendment when he voluntarily

abandoned the firearm. Therefore, the firearm was not abandoned as a result of any

unlawful seizure. Additionally, Officer Church’s directive to stop that precipitated

Defendant’s flight and subsequent abandonment of the firearm did not rise to the

level of illegal police activity that renders abandonment involuntary. See Cooke, 54

N.C. App. at 44, 282 S.E.2d at 808 (holding that the officer’s “threat that an illegal

search was about to take place” precluded a finding of voluntary abandonment).

 The firearm that the State sought to admit at trial was voluntarily abandoned

by Defendant before he was seized by law enforcement officers. As such, the evidence

was not the fruit of a seizure, and the Fourth Amendment does not preclude its

 - 24 -
 STATE V. HOLLEY

 Opinion of the Court

admission at trial, “even though police did not have probable cause to obtain it in the

absence of abandonment.” State v. Borders, 236 N.C. App. 149, 170, 762 S.E.2d 490,

507 (2014). Defendant fails to show error.2

 CONCLUSION

 The trial court erred in denying Defendant’s motion to suppress the firearm

based on its reasoning that officers had the probable cause necessary to arrest

Defendant for resisting, delaying, or obstructing a public officer. The firearm,

however, was not the fruit of an unlawful seizure, as the evidence introduced at trial

established that Defendant voluntarily abandoned the firearm before he was seized

within the meaning of the Fourth Amendment. Therefore, despite the trial court’s

error in resolving the motion to suppress, Defendant has failed to show plain error in

the admission of the firearm at trial.

 REVERSED IN PART; NO ERROR AT TRIAL.

 Judges DILLON and HAMPSON concur.

 2 Defendant argues the State failed to present evidence of voluntary abandonment at the
suppression hearing and that “[t]he suppression order cannot be retroactively justified by evidence the
suppression court never heard.” While we agree with Defendant that the State failed to present such
evidence at the suppression hearing, evidence that the firearm was abandoned before a seizure took
place was presented at trial. Accordingly, while the trial court’s reasoning for denying the motion to
suppress was erroneous, the firearm’s admission at trial does not amount to error.

 - 25 -